**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

KATHARYN MCINTYRE, et al.,

        Plaintiffs,

vs.

        Case No. 18-CV-02617-JWL-GEB

LAURA KELLY, et al.,

        Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT
GOVERNOR LAURA KELLY**

Defendant Laura Kelly, acting in her official capacity as the Governor of the State of

Kansas, moves this Court for an order dismissing her as a defendant to this cause of the action

because the claims against her are precluded by the Eleventh Amendment of the United States

Constitution.

**I.      BACKGROUND**

This case is brought as a proposed class action lawsuit for injunctive relief by individuals

acting on behalf of twelve Kansas children, all of whom are in the custody of the State through

its foster care system.  Plaintiffs' Amended Complaint names several defendants, acting in their

official capacities: the Governor of the State of Kansas, the Secretary of the Kansas Department

for Children and Families, the Secretary of the Kansas Department of Health and Environment,

and the Secretary of the Kansas Department for Aging and Disability Services.  Plaintiffs'

Amended Complaint states four causes of action for alleged violations of Plaintiffs' substantive

due process rights (Count I) and for alleged deprivations of rights afforded by the federal

Medicaid act (Counts II, III, and IV).  Plaintiffs allege that the representative children have been

subjected to these deprivations through Defendants' administration of the Kansas foster care

system.  Plaintiffs' seek declaratory and injunctive relief, specifically requesting that the Court order changes to the administration of the Kansas foster care system.

While Governor Kelly is named as a Defendant to each of these claims, Plaintiffs' Amended Complaint is ambiguous as to the role of the Governor.  Indeed, the Governor of the State of Kansas plays no direct role in the administration of the programs that Plaintiffs now challenge.  Thus, principles of sovereign immunity bar this suit against the Governor.  This Court should dismiss Governor Kelly from this lawsuit pursuant to Fed. R. Civ. P. 12(b)(1**).**

## II.    STANDARDS GOVERNING THIS MOTION

Defendants bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction over Governor Kelly in this instance.  Federal courts possess limited jurisdiction; thus, there exists a presumption against jurisdiction.  *Marcus v. Kan. Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (citing *Pentco Corp. v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir. 1991).  The court must dismiss the cause if at any stage it determines subject matter jurisdiction is lacking.  *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974); Fed. R. Civ. P. 12(h)(3).

A challenge to the court's subject matter jurisdiction on the basis that a defendant is immune from suit under the Eleventh Amendment is properly brought under Rule 12(b)(1).  *See Lewis v. Kan. Dept. of Revenue*, 380 F. Supp. 2d 1211, 1212 (D. Kan. 2005) (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  A Rule 12(b)(1) challenge takes two forms: (1) a facial attack on the sufficiency of the complaint's allegations; or (2) an attack challenging the facts upon which subject matter jurisdiction is based.  *Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Upon a facial attack, the court presumes all allegations in the complaint are true.  *Id.* at 1002.  Upon a factual attack, the court may not presume the truth of the complaint's allegations, and has discretion to consider affidavits, other documents, and can hold

a limited evidentiary hearing to resolve any disputed jurisdictional facts. *Id*. at 1003. Such a procedure explicitly does not convert the motion to a Rule 56 motion. *Id*. The party invoking jurisdiction bears the burden of proving by a preponderance of the evidence that jurisdiction is proper. *Marcus*, 170 F.3d at 1309.

## III.   THE DOCTRINE OF SOVEREIGN IMMUNITY, ESTABLISHED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, BARS PLAINTIFFS' CLAIMS AGAINST GOVERNOR KELLY.

### A.   The Eleventh Amendment Concept of Sovereign Immunity

The Eleventh Amendment protects a State and State agencies acting under State control from suit in federal court without consent. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 687 (1993); *Sturdevant v. Paulsen*, 217 F.3d 1160, 1164 (10th Cir. 2000). The Amendment provides, in relevant part, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . ." U.S. Const., amend XI. This Amendment thus bars suits against state defendants acting in their official capacities, such as Governor Kelly, from suits for damages and other forms of relief. *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002); *Collins v. Daniels,* 916 F.3d 1302, 1361 (10th Cir. 2019).

### B.   Exceptions to Sovereign Immunity Established by *Ex Parte Young*

There are limits to sovereign immunity. In *Ex Parte Young,* 209 U.S. 123, 159-60, 28 S. Ct. 441 (1908), the United States Supreme Court held that federal lawsuits against states or state actors seeking prospective injunctive relief for violations of federal law or the United States Constitution are an exception to the sovereign immunity found in the Eleventh Amendment. *See also Chamber of Commerce v. Edmonson,* 594 F.3d 742, 760 (10th Cir. 2010); *Bushheit v. Green*,

705 F.3d 1157, 1159 (D. Kan. 2012). The *Ex Parte Young* exception does not apply to claims

based on state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The *Ex Parte Young* Court placed conditions on the exception to sovereign immunity. In

order for the federal court to have jurisdiction over claims against a state official, the official

must (1) have "some connection with the enforcement of the act" being challenged and; (2)

"threaten" or be "about to commence" proceedings to enforce the act. 209 U. S at 155-56; *see*

*also Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013) ("Defendants are not required to

have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must

have a particular duty to 'enforce' the statute in question and a demonstrated willingness to

exercise that duty") (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828

(10th Cir. 2007). As a matter of law, these conditions are simply inapplicable to Governor Kelly.

Thus, she cannot be subject to suit.

### C. The *Ex Parte Young* Exceptions Do Not Apply to Governor Kelly, Meaning that She is Immune from Suit

#### 1. Allegations of Plaintiffs' Amended Complaint as to Governor Kelly's Role

Plaintiffs' allegations do not show the required "particular duty to enforce" the statutes in

question, nor have they alleged any willingness of the Governor to exercise such a duty. *See*

Am. Compl. [Doc. 63], ¶ 105, *generally*. The only allegations specific to Governor Kelly are

found in paragraph 105 of the Amended Complaint. There, Plaintiff alleges that the governor

"holds supreme executive power" and is responsible for the enforcement of state laws. Am.

Compl. ¶ 105. Federal courts routinely hold that a governor's general executive duties are

insufficient to fall within the exceptions to sovereign immunity. *Day v. Sebelius*, 376 F. Supp.

2d 1022, 1031 (D. Kan. 2005), *aff'd sub nom. Day v. Bond,* 500 F.3d 1127 (10th Cir. 2007); *See*

*also Women's Emergency Network v. Bus*h, 323 F.3d 937, 949-50(11th Cir. 2003) ("If a

governor's general executive power provided sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant.  Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction.")

Plaintiffs' Amended Complaint incorrectly implies that the Governor enjoys more direct authority to oversee these programs than the plain language of the statutes provides based on her authority to reorganize executive branch agencies.  Am. Compl. ¶ 105. This argument misinterprets the Governor's reorganization powers under Article I, § 6, of the Kansas Constitution. While the Governor may issue an executive reorganization order, this authority remains legislative in nature, "with a limited scope of exercise." *VanSickle v. Shanahan*, 212 Kan. 426, 449, 511 P.2d 223, 242 (1973); *see also* Ks. Const. Art. I, § 6.

First, the Governor lacks the power to unilaterally issue such a reorganization order.  As set forth in Article I, § 6, the legislature has the power to disapprove the order.  The transmittal of a reorganization order to both houses does not necessarily result in the order becoming a law. *VanSickle*, 212 Kan. at 449. The Governor cannot utilize this authority in a vacuum.

Likewise, the Governor's Art. 1, § 6 power to suggest reorganization is not a power to control or usurp a Secretary's duties and responsibilities.  For example, in 2015, then Governor Brownback exercised his Art. 1, § 6 power to transfer the authorities and responsibilities for foster care and Medicaid between KDHE and DCF via Executive Reorganization Order No. 43. This Executive Reorganization Order No. 43, codified at K.S.A. 75-3084 to 75-3089, did not abolish any authorities or otherwise remove authority from either secretary. It merely transferred the authorities previously established by the Legislature between two secretaries and their

5

respective agencies. The powers and duties of these agencies and their respective Secretaries are set by statute. The Governor's Art. 1, § 6 power only allows her to shift those duties to another agency with the Legislature's permission. This is not the kind of direct enforcement power that may invoke the *Ex Parte Young* exception to sovereign immunity.

> **2.** **The Responsibility of the Oversight and Administration of the Kansas Foster Care System Lies with the Designated Secretaries**

While Governor Kelly generally oversees her appointees' administration of the foster care system, she does not enforce the statutes or regulations that control the Kansas foster care system, nor has she expressed any intention to undertake the Secretaries' roles in enforcing those statutes and regulations. Under Kansas law the responsibility and direct management of the programs at issue in this lawsuit rest with the relevant cabinet Secretaries.

The Secretary of DCF is delegated the authority and obligations to: "determine the general policies relating to all forms of social welfare which are administered or supervised by the secretary and to adopt the rules and regulations therefor," K.S.A. 39-708c(b); establish intake offices throughout the state, K.S.A. 39-708c(d); be responsible for the care and protection of children in need of care, K.SA. 39-708c(r); receive reports of abuse and neglect, K.S.A. 38-2226; and organize and establish programs as needed to perform duties and powers as are prescribed by law. K.S.A. 75-1316a.

Likewise, the Secretary of KDADS has the authority and obligations to: inspect, license, certify or accredit centers, facilities, hospitals and providers for individuals with mental illness, intellectual disabilities, developmental disabilities or other disabilities pursuant to federal legislation, and to deny, suspend or revoke a license granted for causes shown, K.S.A. 39-2003(a)(2); establish standards for the provision of community support services and for other community based mental health services provided by mental health centers in consultation with

representatives of mental health centers, consumers of mental health services and family members of consumers of mental health services, K.S.A. 39-1603(j); establish state policies for the disbursement of federal funds within the state and for state administration of federal programs providing services or other assistance to persons who have mental illness, K.S.A. 39-1603(q); and adopt rules and regulations as needed to perform duties and powers as are prescribed by law.  K.S.A.39-1603 (t).

Finally, the Secretary of KDHE has the authority and obligations to: establish policies and adopt rules and regulations for the implementation and administration of the powers, duties and functions prescribed for or transferred to KDHE as provided by law, K.S.A.  75-7403(a); operate the regular medical portion of the state Medicaid program and the Medicaid management information system, K.S.A.  75-7405(c)(1), (5); oversee the Kansas program of medical assistance established in accordance with title XIX of the federal social security act, 42 U.S.C. 1396 *et seq*. ("SSA"), and amendments thereto, K.S.A.  75-7408(a)(1)(A); and supervise and administer the state plan for medical assistance under SSA, K.S.A. 75-7409(a).

These responsibilities, among others, lie with the respective Secretaries.  In no manner is the Governor endowed with similar or parallel responsibility under any statute or regulation.

3.     **Because Governor Kelly Holds No Particular Duty to Enforce the Statutes or to Oversee the Programs at Issue, She Remains Immune from Suit**

Federal courts routinely find that state governors are entitled to sovereign immunity in cases such as this one, where the governor holds general executive powers and bears no specific duties to enforce the statute at issue.  *See Bishop v. Oklahoma,* 333 Fed. Appx. 361, 365 (10th Cir. June 5, 2009) (unpublished) (governor and attorney general's general duties to enforce state law were insufficient to subject them to a lawsuit challenging a constitutional amendment that they had no specific duty to enforce); *Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d

316, 331 (4th Cir. 2001) (suit could not lie against governor who lacked any specific duty to enforce the challenged statutes); *Confederated Tribes & Banks of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999) (governor was immune from suit when governor not charged with operating state lottery); *Shell Oil Co. v. Noel,* 608 F.2d 208, 211-12 (1st Cir. 1979) (governor has no connection with enforcement of motor fuel distribution and sales act).

In a lawsuit similar to the case at hand, *E.C. v. Blunt*, No. 05-0726-CV-W-SOW, 2006 WL 44318, at *1 (W.D. Mo. Jan. 9, 2006), the Western District of Missouri considered whether the Missouri Governor was immune from a lawsuit challenging the administration of Missouri's adoption assistance program.  The Court recognized that the Director of the Missouri Department of Social Services was directly responsible for the management of the department and for the supervision of the challenged programs.  *Id.* at * 1.  The Court concluded that, because the governor did not have a specific duty to enforce any of the challenged statutes, he was entitled to Eleventh Amendment immunity.  *Id.*

The Kansas Governor has been afforded immunity from suit where the governor does not play a direct role in the enforcement of the act being challenged.  *Day v. Sebelius,* 376 F. Supp. 2d 1022 (2005), was an action brought to challenge a Kansas statute that allowed certain undocumented or illegal immigrants to pay in-state tuition at Kansas universities.  Judge Rogers held that the Kansas Governor's generalized responsibility for the enforcement of laws was not a sufficient connection to the challenged statutes allowing tuition for illegal immigrants to make the governor a proper defendant to the lawsuit challenging the statute.  *Id.* at 1031.  The Court dismissed the Governor, finding she was entitled to Eleventh Amendment immunity.  *Id.*

Similar to these decisions, Governor Kelly has no direct legal authority to administer the Kansas foster care system.  She does not manage or run the programs that Plaintiffs now

challenge, nor has she threatened or expressed an intention to act in such a manner; her secretaries of DCF, KDADS, and KDHE perform these functions.  Therefore, Governor Kelly is entitled to sovereign immunity under the Eleventh Amendment.

## IV.    CONCLUSION

The doctrine of sovereign immunity, as established by the Eleventh Amendment to the United States Constitution, operates to protect Defendant Laura Kelly, in her official capacity as Governor of Kansas, from suit in this litigation.  Implementation of the Kansas foster care system is the responsibility of the designated Secretaries, not the Governor.  Thus, this Court lacks jurisdiction to consider this suit against Governor Kelly in her official capacity.  Therefore, pursuant to Fed. R. Civ. P. 12(b)(1), the claims against Governor Kelly must be dismissed with prejudice.

Respectfully Submitted,

**LATHROP GAGE LLP**

By:  _/s/ Jean Paul Bradshaw II_
    Jean Paul Bradshaw, KS Fed. #70010
    Brian Fries, KS #15889
    Grant A. Harse, KS #24666
    Reid K. Day, KS #28319
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108
    Telephone: (816) 292-2000
    Telecopier: (816) 292-2001
    jbradshaw@lathropgage.com
    bfries@lathropgage.com
    gharse@lathropgage.com
    rday@lathropgage.com

    Carrie E. Josserand, KS #18893
    LATHROP GAGE LLP
    10851 Mastin Boulevard
    Building 82, Suite 1000
    Overland Park, Kansas 66210-1669
    Telephone: (913) 451-5100
    Telecopier: (913) 451-0875
    cjosserand@lathropgage.com

**Attorneys for All Defendants**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 25, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jean Paul Bradshaw II
Jean Paul Bradshaw, an Attorney for
All Defendants