## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KATHARYN MCINTYRE, et al.,

     Plaintiffs,

v.

LAURA KELLY, et al.,

     Defendants.

Case No. 18-2617-DDC-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Governor Laura Kelly's Motion to Dismiss (Doc. 79). Plaintiffs sued defendant in her official capacity as Governor of the State of Kansas. She moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), claiming that the court lacks jurisdiction over the claims asserted against her. Plaintiffs have responded (Doc. 96) and Governor Kelly has replied (Doc. 102). For reasons explained below, the court grants Governor Kelly's Motion to Dismiss.

**I.     Background**

The court takes the following facts from plaintiffs' Amended Complaint (Doc. 63) and it views them, as it must, in the light most favorable to plaintiffs. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (explaining that the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]" (citation and internal quotation marks omitted)).

Four representatives bring this proposed class action seeking injunctive relief on behalf of twelve named minor plaintiffs and other children currently in the Kansas foster care system. Plaintiffs seek "injunctive relief compelling [d]efendants to remedy known dangerous practices

and specific structural deficiencies in the Kansas foster care system" and "end violations of their federal rights . . . ."  Doc. 63 at 4 (Am. Compl. ¶ 10).

Plaintiffs assert official capacity claims against four officials for the state of Kansas:  (1) Laura Kelly in her capacity as Governor of the State of Kansas; (2) Laura Howard, in her capacity as Secretary of the Kansas Department for Children and Families ("DCF"); (3) Laura Howard, in her capacity as Secretary of the Kansas Department for Aging and Disability Services ("KDADS"); and (4) Dr. Lee Norman, in his capacity as Secretary of the Kansas Department of Health and Environment ("KDHE").  The Amended Complaint asserts four causes of action against these officials, including:  (a) a substantive due process claim against Governor Kelly and DCF Secretary Howard, alleging they failed to meet their duty to protect plaintiffs; and (b) three distinct claims under specified provisions of the Medicaid Act (42 U.S.C. §§ 1396a(a), 1396d(a), and 1396d(r)), alleging all four defendants failed to provide appropriate physical and mental health screenings and services.

Paragraph 105 of the Amended Complaint sets out Governor Kelly's alleged role in the putative violations:

> Laura Kelly, Governor of Kansas, is sued in her official capacity.  Under Article I, Section 3 of the Kansas Constitution, the governor holds supreme executive power and is responsible for the enforcement of the laws of the state.  She is therefore responsible for ensuring all Kansas executive agencies comply with all applicable laws.  Governor Kelly has the authority to issue executive reorganization orders "transferring, abolishing, consolidating or coordinating the whole or any part of any [executive] state agency, or the function thereof" and to significantly reshape the functions and coordination of defendant agencies DCF, KDHE, and KDADS.  Governor Kelly is also responsible for appointing, and has the power to remove, the Secretaries of DCF, KDHE, and KDADS.  The governor has used her executive authority to manage the work of defendant agencies DCF, KDHE, and KDADS, including child welfare and Medicaid.  Governor Kelly's office is located in this District.

Doc. 63 at 24 (Am. Compl. ¶ 105).

Only Governor Kelly has moved for dismissal.  Docs. 79 & 80.  Her motion argues that she is immune from suit under the Eleventh Amendment, an immunity that if applicable, purportedly deprives the court of subject matter jurisdiction.  *Id.*

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. § 1331; 28 U.S.C. § 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are ones with limited jurisdiction, there is a presumption against jurisdiction and the party invoking jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."  *Id.* at 1003 (citations omitted).  "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the

3

truthfulness of the complaint's factual allegations." *Id.* (citations omitted).  Instead, "[a] court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citations omitted); *see also Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (describing how a court may allow evidence outside the pleadings when a "Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction depends").

### III.    Discussion

Governor Kelly bases her motion here on Eleventh Amendment sovereign immunity. Doc. 80 at 1–9.  As explained in more detail below, Governor Kelly contends sovereign immunity shields her from liability on the Amended Complaint's claims because it has not alleged any facts showing an exception to the state's sovereign immunity applies.  So, Governor Kelly argues, the court must dismiss the claims against her for lack of subject matter jurisdiction. *Id.* at 9.  Plaintiffs respond, contending their claims against Governor Kelly fall within the exception recognized in *Ex parte Young* because she has "the authority and duty to oversee the foster care system," and has "demonstrated [her] willingness to exercise that authority."  Doc. 96 at 7.  Plaintiffs characterize Governor Kelly's motion as a factual attack on the court's subject matter jurisdiction and attach 19 exhibits with their Response.  *Id.* at 13–16; Docs. 97–97-19. Governor Kelly disagrees.  She contends her motion asserts a facial attack.  Doc. 102 at 3–5.

Because the court's decision whether to consider plaintiffs' additional materials turns on whether Governor Kelly's challenge is a facial or factual attack, the court turns to that question first.  In part A, below, the court concludes that Governor Kelly's challenge presents a facial challenge.  That outcome precludes the court from considering plaintiffs' supplementary

4

materials.  In part B, the court turns to Governor Kelly's arguments based on Eleventh

Amendment sovereign immunity.

### A.  Facial or Factual Challenge?

Governor Kelly's motion did not specify whether her motion presented a facial or factual

attack on subject matter jurisdiction.  Plaintiffs took on the issue, however, and they characterize

Governor Kelly's arguments as "factual assertions" that "plainly go beyond the factual assertions

in the Amended Complaint . . . ."  Doc. 96 at 15.  Although plaintiffs concede Governor Kelly's

motion "presents no factual evidentiary materials," plaintiffs nevertheless assert that Governor

Kelly challenges plaintiffs' allegations that she (1) manages or runs certain programs, (2)

threatened or expressed intention to enforce certain laws, (3) enforces Kansas laws that control

foster care programs, and (4) expressed an intention to enforce the Kansas foster care laws.  *Id.* at

14–15.  Plaintiffs thus contend that Governor Kelly's motion challenges the veracity of the facts

alleged in the Amended Complaint and thus, the court may consider the additional evidence

plaintiffs submitted with their Response.  *Id.* at 13.

Governor Kelly's Reply weighs in on this issue.  She disagrees.  The Governor contends

that her motion merely questions the sufficiency of the Amended Complaint's jurisdictional

allegations.  Governor Kelly argues her motion "is premised on [p]laintiffs' failure to

articulate . . . any particular statutory or other legal duty that the Kansas Governor holds in

enforcing the statutes that govern the management of the Kansas foster care system."  Doc. 102

at 3 (citing Doc. 80 at 4; Doc. 63 at 24 (Am. Compl. ¶ 105)).  Governor Kelly asserts her

arguments "simply summarize the statutory authority that places the administration and control

of the Kansas foster care system in the hands of the Agency Secretaries," *i.e.*, she controverts

plaintiffs' legal conclusions about her enforcement power but does not challenge the facts

plaintiffs have alleged.  *Id.* at 5 (citing Doc. 80 at 8–9).  At bottom, Governor Kelly argues, she

has not asserted extraneous facts or challenged any of plaintiffs' alleged facts and thus, her

motion presents a facial attack on the sufficiency of the Amended Complaint's jurisdictional

allegations.

The court agrees with Governor Kelly.  Plaintiffs' characterization of Governor Kelly's

motion as a factual attack confuses legal conclusions with well-pleaded facts.  For instance, the

Amended Complaint alleges that Governor Kelly is "responsible for ensuring all Kansas

executive agencies comply with all applicable laws."  Doc. 63 at 24 (Am. Compl. ¶ 105).

Similarly, the Amended Complaint asserts Governor Kelly "has the authority" to issue certain

executive orders, and "is responsible" for appointing agency secretaries.  *Id.*  But these are "bare

legal assertions" stated "without any supporting factual allegations . . . ."  *Peterson v. Martinez*,

707 F.3d 1197, 1206 (10th Cir. 2013).  Governor Kelly's challenge of the legal conclusions in

plaintiffs' Amended Complaint, does not take on the facts alleged in that pleading.

But it's a closer question whether plaintiffs' allegation that Governor Kelly "has used her

executive authority to manage the work" of various agencies alleges a fact or, instead, simply

recites a legal conclusion.  Doc. 63 at 24 (Am. Compl. ¶ 105).  Plaintiffs contend that Governor

Kelly's motion made "factual assertions" about this allegation, which "demonstrate[s] that a

factual question exists about Governor Kelly's involvement . . . ."  Doc. 96 at 14–15 (citation and

internal quotation marks omitted).  In reply, Governor Kelly maintains that her motion asserts

"matter-of-fact [legal] conclusions that mirror the language in [] *Ex* [*p*]*arte Young* and the

decisions that have followed" it.  Doc. 102 at 5 (citations omitted).  The court agrees with the

Governor's argument.  The court need not presume the truth of "'a legal conclusion couched as a

factual allegation.'"  *Peterson*, 707 F.3d at 1206 (quoting *Papasan v. Allain*, 478 U.S. 265, 286

6

(1986)).  And here, the Amended Complaint provides no factual support for its conclusory

allegation that Governor Kelly "has used her executive authority to manage" various executive

agencies in Kansas.  Doc. 63 at 24 (Am. Compl. ¶ 105).  So, the court rejects plaintiffs'

contention that Governor Kelly's challenge of subject matter jurisdiction consists of a factual

challenge.

Because Governor Kelly's motion presents a facial attack, the court applies "the same

standards under Rule 12(b)(1) that apply to a Rule 12(b)(6) motion to dismiss . . . ."  *Muscogee*

*(Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  Under this

well-known standard, the court considers the factual allegations in the Amended Complaint and

accepts them as true.  *Carter v. Daniels*, 91 F. App'x 83, 85 (10th Cir. 2004) (noting that

"'[w]hen ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's

complaint" and "determine if the complaint alone is sufficient to state a claim; the district court

cannot review matters outside of the complaint.'" (quoting *Jackson v. Integra Inc.*, 952 F.2d

1260, 1261 (10th Cir. 1991))).  In contrast, where the Amended Complaint's assertions consist of

legal conclusions, no presumption of truth attaches.  *See GFF Corp. v. Assoc. Wholesale*

*Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining that the court need not accept

"legal conclusions" as true).  Finally, the court disregards the evidentiary materials attached to

plaintiffs' Response.  The court evaluates Governor Kelly's motion based solely on the factual

allegations in the Amended Complaint.

### B.  Eleventh Amendment Immunity

Governor Kelly argues the allegations in the Amended Complaint are not sufficient to

overcome Eleventh Amendment Immunity for the official capacity claims against her.  The

Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed

to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh

Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns,"

"applies to any action brought against a state in federal court, including suits initiated by a state's

own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive

relief, or money damages."  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir.

2007) (citations omitted).  "The ultimate guarantee of the Eleventh Amendment is that

nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of

Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  While plaintiffs have not sued the State of

Kansas, sovereign immunity also "extends to [suits against] arms of the state and to state

officials who are sued . . . in their official capacity."  *Turner v. Nat'l Council of State Bds. of

Nursing, Inc.*, 561 F. App'x 661, 665 (10th Cir. 2014) (citing *Peterson*, 707 F.3d at 1205).

As the Circuit repeatedly has explained, there are three exceptions to Eleventh

Amendment sovereign immunity:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate
> a state's sovereign immunity by appropriate legislation when it acts under Section
> 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123,
> (1908), a plaintiff may bring suit against individual state officers acting in their
> official capacities if the complaint alleges an ongoing violation of federal law and
> the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted).

Here, plaintiffs rely solely on the third exception to Eleventh Amendment immunity—the

*Ex parte Young* exception.  Plaintiffs assert this exception applies because they are seeking

prospective declaratory and injunctive relief against Governor Kelly.  Governor Kelly does not

dispute that plaintiffs' claims challenge ongoing violations of federal law and seek prospective,

injunctive relief.  Doc. 80 at 1–2.  The court thus examines plaintiffs' arguments solely under the *Ex parte Young* exception.

 *Ex parte Young* held that "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself."  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 159–60).  To determine whether "the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted).  This inquiry does "not include an analysis of the merits of the claim."  *Id.* at 637.  When confronted with such a challenge, plaintiffs must show (1) an ongoing violation of federal law and (2) that they seek prospective relief only, not a judgment against state officers "declaring that they violated federal law in the past."  *Johns v. Stewart*, 57 F.3d 1544, 1552–53 (10th Cir. 1995).[1]

 For the *Ex parte Young* exception to apply, the state officer must have "'some connection with enforcement of the act.'"  *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157).  Specifically, plaintiffs "must

---

[1]  To the extent plaintiffs' claims seek a remedy for past violations of plaintiff's federal rights, plaintiff's claims are barred because the *Ex parte Young* exception doesn't exempt those claims from Eleventh Amendment immunity.  *Johns*, 57 F.3d at 1552–53 ("The Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993))); *see also* Doc. 63 at 67 ("First Cause of Action," alleging that Governor Kelly's "actions and inactions" have deprived plaintiffs "of their substantive due process rights guaranteed by the Fourteenth Amendment" and plaintiffs "*have been harmed* or are at continuing and imminent risk of harm"), 70 (seeking court's declaration that Governor Kelly's past actions are unconstitutional (emphasis added)).

adequately allege the individual official's duty to enforce the statute in question and a demonstrated willingness to do so." *Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014); *see also Edmondson*, 594 F.3d at 760.  The court thus considers whether plaintiffs adequately have alleged that Governor Kelly has a duty to enforce the laws in question. *See Edmondson*, 594 F.3d at 760 (evaluating whether defendant had "a particular duty to enforce" a statute and "a demonstrated willingness to exercise that duty" (citations and internal quotation marks omitted)).

Governor Kelly contends plaintiffs have failed to allege that she has a duty to enforce the statutes in question or otherwise oversee the Kansas foster care program.  She asserts that the allegations in the Amended Complaint rely solely on the Kansas Governor's "'supreme executive power.'"  Doc. 80 at 4 (quoting Doc. 63 at 24 (Compl. ¶ 105)).  And, because "a governor's general executive duties are insufficient to fall within the exceptions to sovereign immunity," Governor Kelly argues the court must dismiss her from this lawsuit.  *Id.* at 4–5 (citing *Day v. Sebelius*, 376 F. Supp. 2d 1022, 1031 (D. Kan. 2005)).  Governor Kelly also contends she lacks the "unilateral[]" authority to reorganize executive agencies and cannot use her power to "control or usurp a Secretary's duties and responsibilities."  *Id.* at 5.  Thus, Governor Kelly argues, she lacks the requisite "direct enforcement power" necessary to invoke the *Ex parte Young* exception to sovereign immunity.  *Id.* at 6.

Plaintiffs respond, contending Governor Kelly "has a particular duty to enforce the conduct at issue and to oversee the programs at issue" here.  Doc. 96 at 19.  In support, plaintiffs assert the Kansas Constitution explicitly vests the Kansas Governor with "supreme executive power" over Kansas.  *Id.*

Our court considered a similar issue in *Day v. Sebelius*.  376 F. Supp. 2d at 1031.  In that case, District Judge Richard Rogers held that the Kansas Governor's "general enforcement power" under the Kansas Constitution "is not sufficient to establish the connection to [a] statute required to meet the *Ex parte Young* exception to Eleventh Amendment Immunity."  *Id.* (citing *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003)).  Absent a statute conferring enforcement power on the Governor, the court held the Governor was entitled to Eleventh Amendment Immunity.  *Id.*

Plaintiffs try to distinguish *Day*, arguing that Governor Kelly "is closely involved in the enforcement and oversight of the Kansas foster care system."  Doc. 96 at 20.  While plaintiffs' brief makes many references to Governor Kelly's involvement in the Kansas foster care system, they never rely on facts alleged by their Amended Complaint.  *E.g.*, *id.* at 21 (arguing Governor Kelly repeatedly has involved herself in matters related to foster care and Medicaid and relying on Docs. 97-6, 97-11, 97-15, & 97-16).  Because Governor Kelly makes a facial attack on the court's jurisdiction, the court cannot consider alleged facts taken from outside the Amended Complaint.  *Carter*, 91 F. App'x at 85 (noting that the court "must determine if the complaint alone is sufficient to state a claim" and "cannot review matters outside of the complaint" (citation and internal quotation marks omitted)).  So, for purposes of deciding the current question, the court disregards plaintiffs' references to materials outside the Amended Complaint.

Plaintiffs also argue Governor Kelly's duty here is conferred by a Kansas statute that requires the DCF Secretary to "'advise the governor and the legislature on all social welfare matters covered in this act.'"  Doc. 96 at 21 (quoting Kan. Stat. Ann. § 39-708c(c)).  But this connection is tenuous on its best day.  The cited statute generally describes the various duties assigned to the DCF Secretary.  Kan. Stat. Ann. § 39-708c(a)–(y).  Yet plaintiffs never direct the

court to a similar statute assigning enforcement obligations to Governor Kelly.  Instead, plaintiffs

rely on the general executive duties assigned to the Kansas governor by the Kansas Constitution.

Doc. 96 at 19.  This general enforcement power is not enough to satisfy the *Ex parte Young*

exception.  And absent a "particular duty to enforce" the Kansas statutes applicable to the foster

care system, plaintiffs' claims against Governor Kelly fall "outside the scope of the *Ex parte*

*Young* exception."  *Edmondson*, 594 F.3d at 760.

Considering the Amended Complaint's allegations, the court concludes the Amended

Complaint has not alleged sufficient facts that, if true, could support a finding that Governor

Kelly possesses the requisite duty to enforce the statutes and policies placed in issue by the

Amended Complaint.[2]  And, thus, the court concludes that the Eleventh Amendment shields

Governor Kelly from the claims asserted in the Amended Complaint.

### IV.    Conclusion

For the reasons explained in this Order, the court concludes Eleventh Amendment

immunity protects Governor Kelly from suit on the claims asserted by the Amended Complaint.

---

[2]     Plaintiffs' Response goes on to discuss Governor Kelly's purported willingness to exercise her
enforcement duties.  Doc. 96 at 23–24.  But the court need not—indeed, it cannot—consider these
arguments for two reasons.  *First*, plaintiffs' arguments about defendant's willingness to exercise
enforcement rely exclusively on materials outside the Amended Complaint.  *Carter*, 91 F. App'x at 85
(noting that the "court cannot review matters outside of the complaint" on a motion to dismiss).  *Second*,
the court is not convinced that, standing alone, an official's *willingness* to act is sufficient to fall within *Ex
parte Young*'s narrow exception.  *Kitchen v. Herbert*, 755 F.3d 1193, 1202–03 (10th Cir. 2014)
(concluding defendants demonstrated a willingness to exercise a duty only after concluding defendants
were "statutorily charged" with enforcement duties); *Peterson*, 707 F.3d at 1207 (concluding claims
didn't fall within *Ex parte Young* exception because defendant had no particular duty to enforce the
statute at issue, and acknowledging that a defendant could be connected to a statute's enforcement via
"[a] state law, an administrative delegation, or demonstrated practice of enforcing a provision," but noting
"when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a
different official absent some evidence that the defendant is connected to the enforcement of the
challenged law"); *Edmondson*, 594 F.3d at 760 (concluding *Ex parte Young* exception didn't apply
because plaintiff had failed to show defendant had a duty to enforce a statute without considering whether
defendant had "demonstrated a willingness to exercise" a duty (citation and internal quotation marks
omitted)).

The court thus grants Governor Kelly's Motion to Dismiss (Doc. 79) under Fed. R. Civ. P. 12(b)(1) because it lacks subject matter jurisdiction over those claims.

A final note is in order.  In the fortieth footnote of their Response to Governor Kelly's motion, plaintiffs asked for leave to amend their Amended Complaint if the court "treats [d]efendant's motion as a facial challenge" decided "solely on the allegations in the Amended Complaint . . . ."  Doc. 96 at 15 n.40.  To be sure, the court sometimes allows a party facing a Rule 12(b) motion to neutralize the motion by filing a motion to amend the challenged complaint in a way that will obviate the motion.  Courts typically are more receptive to this kind of response to a motion made under Rule 12(b)(6) because dismissal under that rule often qualifies as a ruling on the merits.  *See Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 n.2 (10th Cir. 2018) ("Unless otherwise stated, dismissals under Rule 12(b)(6) are with prejudice." (citing *Slocum v. Corp. Express U.S. Inc.*, 446 F. App'x 957, 960 (10th Cir. 2011) (further citation omitted))).

In contrast, granting a Rule 12(b)(1) motion, like the one made here, simply produces a dismissal without prejudice.  *Strozier v. Potter*, 71 F. App'x 802, 804 (10th Cir. 2003) ("A district court's dismissal for lack of subject matter jurisdiction should be without prejudice." (citations omitted)).  If plaintiffs sincerely believe they can plead a claim against Governor Kelly that qualifies for *Ex parte Young*'s narrow exception, they can file a properly supported Rule 15 motion to amend their existing Amended Complaint.  But the court is unwilling to provide that opportunity based on a vague, unsupported, and stray request assigned to the Response's final stages.  *See Barrett v. Univ. of N.M.*, 562 F. App'x 692, 694–95 (10th Cir. 2014) (affirming district court's decision to deny request to amend asserted in opposition papers and noting, a

"formal motion to amend, accompanied by a purported amended complaint, gives the [trial]

judge an opportunity to consider whether the new complaint can pass muster").

      **IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Laura Kelly's

Motion to Dismiss (Doc. 79) is granted.

      **IT IS SO ORDERED.**

      **Dated this 3rd day of June, 2020, at Kansas City, Kansas.**

                      **s/ Daniel D. Crabtree**
                      **Daniel D. Crabtree**
                      **United States District Judge**