**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| **M.B.** and **S.E.** through their next friend Katharyn McIntyre, **R.M.** through his next friend Allan Hazlett, **C.A.** through his next friend Allan Hazlett, **E.B.** through his next friend Allan Hazlett, **J.P.** through her next friend Allan Hazlett, **Z.Z.** through her next friend Ashley Thorne, and **M.A.** through his next friend Ashley Thorne, for themselves and those similarly situated, <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **Laura Howard** in her official capacity as Kansas Department for Children and Families Secretary, **Dr. Lee A. Norman** in his official capacity as Kansas Department of Health and Environment Secretary, and **Laura Howard** in her official capacity as Kansas Department for Aging and Disability Services Secretary, <br><br>        **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:18-cv-02617-DDC-GEB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF CLASS NOTICE AND MEMORANDUM OF LAW IN SUPPORT

After extensive, arms-length negotiation, the parties have entered into a proposed

Settlement Agreement resolving this class action lawsuit.  The parties' Settlement Agreement is

attached to this Motion as Exhibit A.  With this unopposed motion, Plaintiffs M.B. and S.E.

through their next friend Katharyn McIntyre, R.M., C.A., E.B., and J.P. through their next friend

Allan Hazlett, and Z.Z. and M.A. through their next friend Ashley Thorne ("Plaintiffs") seek an

order from the Court conditionally certifying a settlement class and preliminarily approving the Settlement Agreement on the terms discussed below.

"Class action settlements require court approval." *Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 7242501, at *4 (D. Kan. Dec. 15, 2016). To approve a class action settlement, "the court must find that it is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)). This determination usually involves a two-step process. In the first step, the court makes an initial decision "whether the proposed settlement is 'fair, reasonable, and adequate,' and if it is, the court preliminarily approves the settlement and orders the parties to send notice of the settlement to class members." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). In the second stage, the court holds a formal fairness hearing, "entertains any objections," makes a final determination of "whether the settlement is 'fair, reasonable, and adequate,' and either denies or approves the settlement." *Id.*

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the proposed Class described below for settlement purposes and appoint Plaintiffs' Counsel as Class Counsel; (3) approve the form and manner of the Notice of Proposed Class Action Settlement, which is attached to this Motion as Exhibit B; (4) set deadlines for the submission of a motion for fees and costs and related briefing; (5) set the deadline for written submissions from Class members or their legal representatives who wish to be heard in favor of or in objection to the Settlement Agreement; and (6) set the date for a final fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

## I.      OVERVIEW OF THE LITIGATION

On November 16, 2018, Plaintiffs, all children in the foster care custody of the Kansas Department for Children and Families ("DCF"),[1] brought this suit through their next friends against the Secretary of the Kansas Department for Children and Families, the Secretary of the Kansas Department for Aging and Disability Services ("KDADS"), and the Secretary of the Kansas Department of Health and Environment ("KDHE"), each in their official capacity.[2]  ECF No. 1.

The complaint, as amended on September 6, 2019, alleges that Defendants violated Plaintiffs' rights under the Fourteenth Amendment by subjecting them to extreme housing disruption and numerous short-term foster care placements, and under the federal Medicaid Act by failing to provide them with necessary mental health and behavioral health screening, diagnostic services, evaluation, and treatment.  ECF No. 63 ¶¶ 243-56.  To address these issues, Plaintiffs sought to bring claims solely for declaratory and injunctive relief on behalf of both a General Class that included all children in current or future DCF custody, and a Mental Health Treatment Subclass that included such children with current or future identified behavioral or mental health needs.  *Id.* at ¶¶ 109-25.  In their Answer to the First Amended Complaint, Defendants denied liability for any and all of Plaintiffs' claims.  ECF No. 74.

---

[1] When the lawsuit was originally initiated, the named Plaintiffs included ten children in DCF custody.  ECF No. 1.  Plaintiffs subsequently amended their complaint in September 2019 to remove some of the original named Plaintiffs who had turned eighteen years old or otherwise exited DCF custody, and to add new named Plaintiffs who were in DCF custody at that time. ECF Nos. 57, 63.  On July 8, 2020, the parties filed a joint stipulation dismissing the claims of four named Plaintiffs who had recently turned eighteen years old.  ECF No. 132.

[2] The complaint also named the Kansas governor as a Defendant.  On June 3, 2020, the Court granted Governor Laura Kelly's Motion to Dismiss on jurisdictional grounds.  ECF No. 118.

Prior to filing the lawsuit, Plaintiffs' counsel undertook an approximately year-long investigation, beginning in 2017.  Declaration of Leecia Welch ("Welch Decl.") ¶ 11.  This inquiry included a close examination of Kansas's child welfare system, the placement of children in that system, their access to required mental health services, and the state's oversight and monitoring of the private contractors who perform case management services for foster children in the state's custody.  *Id.*  During this investigation, counsel interviewed dozens of stakeholders across the state and spent hundreds of hours obtaining, compiling, and analyzing data, reports, and other relevant information.  *Id.*

Since the lawsuit was filed, the parties have engaged in discovery efforts, including the exchange of significant additional information about the Kansas child welfare system and placements of and mental health care available for children.  *Id.* at ¶ 12.  Plaintiffs have propounded multiple document requests, ECF Nos. 100, 104, 106, 114, and Defendants have produced more than 75,000 pages in discovery, which Plaintiffs have reviewed.  The parties have also propounded several sets of interrogatories to each other.  ECF Nos. 50, 100, 114, 115.  In addition, Plaintiffs have issued eight third party document subpoenas, ECF Nos. 108-111, 119-122, and have received some initial productions in response from third parties, Welch Decl. ¶ 12.  Plaintiffs have also taken a Rule 30(b)(6) deposition of DCF.  *Id.*

This settlement is the result of lengthy negotiations.  In May 2019, Plaintiffs served Defendants with their initial settlement terms sheet.  *Id.* at ¶ 13.  In July 2019, Defendants responded with their settlement counterproposal.  *Id.*  Subsequently, the parties agreed to retain a skilled neutral subject matter expert, Kevin Ryan of Public Catalyst, as a mediator to assist them in exploring the potential for settlement.  *Id.*  After submitting confidential mediation statements to the mediator, the parties met in person in Kansas City for mediation sessions supervised by

Mr. Ryan on November 12, 2019, December 15 and 16, 2019, February 7, 2020, and February 25 and 26, 2020.  ECF Nos. 90-1, 103-1.  The parties agreed to a forty-five day stay of general discovery during this time period to focus on mediation.  ECF Nos. 91, 94.  Although the parties made substantial progress in negotiating a settlement during these sessions, the parties were unable to reach an agreement as of late February 2020, and returned to intensive discovery.  *Id.*  In May of 2020, the parties re-engaged in settlement negotiations, exchanging settlement drafts, and then meeting by videoconference on June 4, 10, 11, and 18, 2020.  *Id.*  These renewed efforts resulted in the Settlement Agreement now before the Court.  *Id.*

The Settlement Agreement was executed by all parties as of July 8, 2020.  It resolves all claims brought by Plaintiffs on behalf of a proposed Settlement Class against Defendants DCF, KDHE, and KDADS.  The Settlement Agreement explicitly contemplates dismissal of the pending claims with the Court retaining jurisdiction for purposes of enforcing the terms of the Settlement Agreement, and conformance with Federal Rule of Civil Procedure 23(e), 41(a), and 65(d).  Settlement Agreement ¶¶ 4.6, 4.7, 5.2.2, 5.2.6.

## II.   SUMMARY OF THE SETTLEMENT AGREEMENT

Plaintiffs continue to believe that their federal statutory and constitutional claims are meritorious and properly redressable on a class-wide basis.  Defendants deny any violations of federal law.  Despite these positions, the parties share a common desire to address the concerns raised in this lawsuit in a way that benefits the children and families served by the state's child welfare system.

To that end, the parties' Settlement Agreement addresses the issues raised in Plaintiffs' Amended Complaint by obligating Defendants to: (1) implement a set of practice improvements relating to placements and access to mental health services, Settlement Agreement ¶¶ 2.2-2.5;

(2) achieve measurable outcomes regarding placements and mental health services access, *id.* at ¶¶ 2.6-2.9; (3) incorporate the Settlement's mandates relating to practice improvements and outcomes into their grants for foster care case management, *id.* at ¶ 2.1.1; (4) create a community accountability structure, *id.* at ¶ 2.1.2; and (5) work with a highly respected child welfare policy group as the court-appointed Neutral providing performance assessment and validation concerning the agreed-upon requirements set forth above and as fully described in the Settlement Agreement, *id.* at ¶ 3.1.

Pursuant to the Settlement Agreement, Defendants will implement practice improvements with the goal of improving placement stability and ensuring access to behavioral and mental health services for Class members.  *Id.* at ¶¶ 2.2-2.5.  The practice improvements include: (1) ending the practice of housing children in inappropriate locations such as agency offices and hotels, *id.* at ¶ 2.5.1; (2) ensuring that placements are not overcrowded and do not exceed licensed capacity, *id.* at ¶ 2.5.2; (3) ending delay in the provision of medically necessary mental health services tied to placement stability, *id.* at ¶ 2.5.3; (4) ensuring access to crisis intervention services for children statewide, *id.* at ¶ 2.5.4; and (5) ending the use of night-to-night placements and short-term placements lasting less than fourteen days, *id.* at ¶ 2.5.5.  The Settlement Agreement requires that Defendants must achieve substantial compliance with these practice improvements and then continue to maintain compliance with each practice improvement for an additional twelve-month period, as validated by a neutral expert, in order to exit from that requirement, *id.* at ¶¶ 2.2, 2.4.

Defendants must also achieve measurable outcomes that demonstrate sustained improvements regarding placement stability and access to behavioral and mental health services for children in DCF custody.  *Id.* at ¶¶ 2.6-2.9.  Specifically, the Settlement Agreement phases in,

over a time period of three to four years, requirements that Defendants ultimately: (1) achieve an average low rate of placement moves, 4.4 moves or less per 1000 days in care, *id.* at ¶ 2.9.1; (2) address mental health and behavioral health treatment needs for at least 90% of cases, *id.* at ¶ 2.9.2; (3) ensure the current placement is stable for at least 90% of cases, *id.* at ¶ 2.9.3; (4) limit placement changes to one move over twelve months for at least 90% of cases, *id.* at ¶ 2.9.4; and (5) provide an initial mental health and trauma screen within thirty days of entering state care for at least 90% of cases, *id.* at ¶ 2.9.5.  Similar to the practice improvements, the Settlement Agreement requires that Defendants achieve these outcomes and then continue to maintain compliance for an additional twelve-month period, as validated by a neutral expert, *id.* at ¶¶ 2.6, 2.8.

These obligations under the Settlement Agreement will be binding regardless of whether the relevant activities are performed by Defendants, their employees, or any third-party contractors or grantees with whom Defendants work to provide foster care placements or services, including mental and behavioral health services, to children in foster care.  *Id.* at ¶ 6.5. Defendants must amend their grants for foster care case management to include mandates related to the outcomes and practice improvements described above.  *Id.* at ¶ 2.1.1.

The Settlement Agreement also requires the creation of a community accountability structure through the development of an independent advisory group to inform planning, program improvement, and implementation of the Settlement Agreement.  *Id.* at ¶ 2.1.2.  This advisory group will include numerous stakeholders outside of the state agencies, including foster care providers, parents, youth with involvement in the child welfare system, and professionals who provide services to such youth and families.  *Id.*

The Settlement Agreement identifies as the Neutral Judith Meltzer and the Center for the Study of Social Policy, a highly respected child welfare policy group with substantial experience as court-appointed neutrals, who will independently review, validate, and report on Defendants' performance pursuant to the terms of the Settlement Agreement.  *Id.* at ¶¶ 1.5, 3.1.

The Settlement Agreement also includes a process for alternative dispute resolution and mediation.  It identifies as the Mediator Karen Baynes-Dunning, *id.* at ¶¶ 1.14, 4.1, a former juvenile court judge with substantial experience as a federal court-appointed monitor in child welfare cases.  The Settlement Agreement requires the parties to engage in a confidential mediation process overseen by the Mediator to address disputes regarding compliance, noncompliance, or exit from the Settlement Agreement, before seeking Court intervention.  *Id.* at ¶¶ 4.1-4.7.  Class Counsel may bypass the mediation process and seek immediate relief from the Court in limited circumstances, including if there is an immediate and substantial risk of harm to Class members and no time for negotiations.  *Id.* at ¶ 4.7.

Finally, regarding attorneys' fees and expenses, the Settlement Agreement provides that "Defendants stipulate that Class Counsel is entitled to" "reasonable fees and expenses."  *Id.* at ¶ 1.4.  The Settlement Agreement leaves the determination of the reasonable amount of such fees and expenses to the Court.  *Id.*

## III.     THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED.

Pursuant to the Settlement Agreement, the proposed Class is defined for settlement purposes as:

> All children who are now, or in the future will be, in the protective custody of DCF pursuant to Kan. Stat. Ann. § 38-2242(c)(1).[3]

---

[3] As noted above, the Amended Complaint identified two classes: a General Class containing all children in the custody of DCF, and a "Mental Health Treatment Subclass" consisting of only

*Id.* at ¶ 1.2. The parties have mutually agreed to seek this Court's provisional certification of the proposed Class in order to settle the claims brought in this case on a class-wide basis.

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004).  At the preliminary approval stage, the Court must make a preliminary determination whether the proposed class satisfies the requirements of Rule 23(a) and (b)(2), subject to a final determination at the fairness hearing.  *See* Manual for Complex Litigation (Fourth) § 21.632 (2004); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 674-75 (D. Kan. 2009).  For the purposes of settlement, the parties agree that the requirements of Rule 23(a) and (b)(2) are met, as further set forth below.

## A.  <u>The Class Satisfies Each Requirement of Rule 23(a).</u>

Rule 23(a) allows "[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all members only if" the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  This proposed Class satisfies each requirement for the purposes of settlement.

---

children who have or will have an identified behavioral or mental health need.  ECF No. 63 at ¶¶ 109-25.  Because the Settlement Agreement includes requirements related to the provision of behavioral and mental health screening and services for all Class members, the parties do not seek certification of a Mental Health Treatment Subclass for settlement purposes.

**1.   The Class satisfies the numerosity requirement.**

Rule 23(a)'s numerosity requirement demands that "the class is so numerous that joinder of all members is impracticable." *Id.* "[T]here is 'no set formula to determine if a class is so numerous it should be so certified.'" *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)). "Besides size, other factors relevant to the practicality of joinder include: the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 157 (D. Kan. 1996) (citation omitted).

The Class here easily satisfies the numerosity requirement.  The parties agree that there are more than 7,000 children in the Class.  ECF No. 63 ¶ 111; ECF No. 74 ¶ 111.  *See Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014) ("A class of at least 233 people is sufficiently large that joinder of all members is impracticable.").  This suit seeks only injunctive and declaratory relief that will inure to the benefit of all members of the Class.  It would be impracticable to require all Class members, who are minor children, to prosecute separate suits seeking such relief.

**2.   The Class satisfies the commonality requirement.**

Rule 23(a)'s commonality requirement necessitates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  "This inquiry requires the Court to find only whether common questions of law or fact exist." *In re Motor Fuel*, 258 F.R.D. at 679.  "A finding of commonality requires only a single question of law or fact common to the entire class." *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).  The commonality requirement is satisfied where the plaintiffs' claims depend on a "common

contention" that is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).

The commonality requirement is met here for the purposes of settlement, because the claims depend on at least one common contention of fact or law that can resolve central issues in one stroke. *See id.* The Class members share the common factual questions of whether Defendants have policies, practices, customs, or patterns of subjecting youth in their custody to extreme housing disruption and of whether Defendants have failed to provide access to behavioral health, mental health, and trauma screening and services. The Class members also share the common legal questions of whether the alleged policies, practices, customs, or patterns subject them to an unreasonable risk of harm and violate their substantive due process and/or statutory rights under the Medicaid Act. These questions can be answered on a class-wide basis.

### 3. The Class satisfies the typicality requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *D.G.*, 594 F.3d at 1198. "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198-99.

The Named Plaintiffs' claims arise from the same factual nexus as the claims of the Class: the alleged risk of harm stemming from Defendants' challenged policies and practices of extreme housing disruption and failure to provide adequate mental and behavioral health screening and services. *See id.* at 1199 ("typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's

individual circumstances"). The Named Plaintiffs' claims are also based on the same legal theories as those of the Class, namely that Defendants' alleged policies and practices violate their substantive due process right to be free from harm while in state custody and deprive them of their rights under the Medicaid Act. *See id.* (holding typicality requirement was met for a similar class of children in foster care). Thus, Rule 23(a)'s typicality requirement is satisfied.

### 4. The Class satisfies the adequacy requirement.

The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, the court must "determine (1) whether the class representative and class counsel have interests that would conflict with the interests of other class members, and (2) if the class representative and counsel will prosecute the case vigorously on behalf of the class." *Rodriquez v. Hermes Landscaping, Inc.*, Case No. 17-2142, 2018 WL 4257712, at *4 (D. Kan. Sept. 5, 2018). The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The adequacy of class representation . . . is ultimately determined by the settlement itself." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (10th Cir. 1995) (alteration in original) (internal quotation marks and citation omitted).

Here, Plaintiffs, through their next friends, and their counsel are committed to vigorously and competently protecting the interests of the proposed Class members, as demonstrated through their substantial efforts throughout this litigation and through their negotiation of the Settlement Agreement, which provides substantial benefits to the Class. Plaintiffs share the same claims, arising out of the same common course of conduct and based upon the same legal theories as the other Class members, and their interests are aligned with those of the Class.

Further, each next friend, on behalf of the Named Plaintiffs whom he or she represents, is dedicated to improving Defendants' policies and practices, which pose the same risk of harm to Plaintiffs and other Class members.

In addition, Plaintiffs' counsel are deeply committed to representing the Class, have demonstrated their willingness to vigorously pursue the claims brought here, and have substantial experience in handling complex class actions, including suits on behalf of children in foster care asserting claims similar to those in this suit.  Welch Decl. ¶¶ 2-10; Declaration of Ira Lustbader ("Lustbader Decl.") ¶¶ 3-9;  Declaration of Teresa A. Woody ("Woody Decl.") ¶¶ 2-13; Declaration of Loretta Burns-Bucklew ("Burns-Bucklew Decl.") ¶¶ 2-8; Declaration of Caryn Schechtman ("Schechtman Decl.") ¶¶ 2-5.  Accordingly, Rule 23(a)'s adequacy requirement is met for settlement purposes.

## B.  **The Class Satisfies the Requirements of Rule 23(b)(2).**

In addition to meeting the requirements of Rule 23(a), a party seeking class certification pursuant to Rule 23(b)(2) must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

> Rule 23(b)(2) "imposes two independent, but related requirements" upon those seeking class certification. . . . First, plaintiffs must demonstrate defendants' actions or inactions are "based on grounds generally applicable to all class members." . . . Second, plaintiffs must also establish the injunctive relief they have requested is "appropriate for *the class as a whole.*" . . . Together these requirements demand "cohesiveness among class members with respect to their injuries . . . ."

*D.G.*, 594 F.3d at 1199 (quoting *Shook v. Board of County Comm'rs of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("*Shook II*")) (emphasis in original).  In order to show the required cohesiveness, plaintiffs must describe the injunctive relief requested in "'reasonably

particular detail'" as required under Fed. R. Civ. P. 65(d) and "show that class members' injuries are 'sufficiently similar' that they can be remedied in a single injunction without differentiating between class members." *Id.* at 1200 (citing *Shook II,* 543 F.3d at 604).

Rule 23(b)(2) is met here.  "[T]he 'grounds' that have general application to the class are that all class members have been placed in [DCF's] foster care program," and, as such, are cared for in a system that allegedly subjects them to an alleged impermissible risk of harm due to the practice of extreme placement disruption and lack of access to behavioral and mental health screenings, diagnosis, and treatment.  *D.G.*, 594 F.3d at 1201.  As demonstrated by the parties' Settlement Agreement and laid out in substantial detail there, these alleged harms can be remedied by injunctive relief that is appropriate to the class as a whole, including by, for example: ending the practice of housing children in inappropriate locations such as agency offices and hotels; eliminating the use of night-to-night placements and placements lasting less than fourteen days; ensuring access to crisis intervention services for children statewide; and ensuring prompt provision of necessary mental health services.

## IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

"At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, *i.e.* whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing."  *Alexander v. BF Labs Inc.*, No. CV 14-2159-KHV, 2016 WL 5243412, at *9 (D. Kan. Sept. 22, 2016) (collecting citations).  At this stage, courts apply a "less stringent" standard than that at final approval.  *Freebird, Inc. v. Merit Energy Co.*, No. CIV.A. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012).  "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class and falls

within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.,*

286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotations and citation omitted).

   Rule 23(e) provides that a proposed settlement may be approved only after the Court

makes a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Tenth

Circuit has directed district courts to consider four non-exclusive factors in determining whether

a proposed settlement is "fair, reasonable, and adequate":

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of
> the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of
> future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also* Fed.

R. Civ. Proc. 23(e)(2) (identifying factors a court must consider in determining that a proposed

class action settlement agreement is fair, reasonable, and adequate).  "These inquiries do not

require the court to 'conduct a foray into the wilderness in search of evidence that might

undermine the conclusion that the settlement is fair.'"  *Jackson v. Ash*, No. 13-2504-EFM-JPO,

2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015) (citation omitted).

   As a matter of public policy, the law favors and encourages settlements.  *Amoco Prod.*

*Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354-55 (10th Cir. 1972); *Grady v. de Ville Motor*

*Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969).  This is particularly true in the context of class

actions and other complex cases, where substantial judicial resources can be conserved by

avoiding protracted litigation.  *See Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*,

2015 WL 4523806, at *2 (D. Kan. July 27, 2015) ("The law favors compromise and settlement

of class action suits."); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d

Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should

therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.

2005) (recognizing the "strong judicial policy in favor of settlements, particularly in the class

action context") (internal quotation marks and citation omitted).

###### 1.   The Settlement Agreement was fairly and honestly negotiated.

The Settlement Agreement is the result of extensive negotiations conducted at arm's

length and in good faith by seasoned counsel.  The parties' negotiations were lengthy, at times

contentious, and largely overseen by a highly skilled and experienced independent mediator,

Kevin Ryan, who is a subject matter expert in reform of child welfare systems.  *See, e.g.*, *In re*

*Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the

settlements were reached only after arduous settlement discussions conducted in a good faith,

non-collusive manner, over a lengthy period of time, and with the assistance of a highly

experienced neutral mediator with a background in" the substantive law at issue.).

The parties have a thorough understanding of the facts and legal arguments at issue in

this lawsuit.  Plaintiffs' counsel spent considerable time investigating this lawsuit pre-filing.

Since filing, this case has been pending for more than nineteen months.  During that time, the

parties have engaged in extensive initial discovery, including the production and review of more

than 75,000 pages of documents.  This supplemented the extensive investigation that Plaintiffs'

counsel undertook prior to filing the lawsuit.  The parties' comprehensive settlement

negotiations, which took place over the course of more than eight months, were well-informed

by the knowledge their respective counsel had gained through their investigations of the law and

facts of the case.  Based on this knowledge and counsel's extensive experience in litigating

similar cases, *see, e.g.*, Welch Decl. ¶¶ 3, 5; Lustbader Decl. ¶¶ 6-7; Burns-Bucklew Decl. ¶ 6, the parties were able to make well-informed assessments regarding the strengths and weaknesses of their respective claims and defenses, as well as about the costs and risks of proceeding to trial.

Because the parties engaged in well-informed, serious, non-collusive negotiations, this factor favors preliminary approval.

### 2. Serious questions of law and fact exist.

> "Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006) (citation omitted). Litigating a class action case always carries some risk, especially at this stage, as the Class has not yet been certified by the Court. Defendants have alleged numerous legal and factual defenses that, absent settlement, will require significant additional discovery. Further, substantive due process and Medicaid Act claims are inherently complex. The presence of serious questions of law and fact, as exist here, favors settlement "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Accordingly, this factor weighs in favor of preliminary approval of the Settlement Agreement.

### 3. The value of immediate recovery outweighs the mere possibility of relief.

"The third factor the court must consider is 'whether the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (citation omitted). "The value of the settlement must be weighed against 'the possibility of some greater relief at a later time,

taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *Id.*

Here, the parties' Settlement Agreement represents substantial, enforceable commitments by Defendants to redress the very issues that Plaintiffs filed suit to address.  Among other things, Defendants have agreed to specific changes in practices, including to stop using night-to-night placements and other short-term placements lasting less than fourteen days, to end the practice of housing children in inappropriate locations such as agency offices and hotels, and to ensure children have prompt access to crisis intervention services statewide.  Settlement Agreement ¶¶ 2.2-2.5.  Defendants have also agreed to concrete, enforceable outcomes regarding placements and mental and behavioral health services for children in foster care, including: (1) ensuring that at least 90% of Class members' mental and behavioral health treatment needs are addressed; (2) providing an initial mental health and trauma screen within thirty days of entering state care for at least 90% of cases; (3) ensuring that the rate of placement moves for Class members does not exceed 4.44 moves per 1,000 days in care; (4) ensuring that at least 90% of Class members are in a stable placement; and (5) limiting placement changes to one move over twelve months for at least 90% of Class members.  *Id.* at ¶¶ 2.6-2.9.  These changes represent significant relief redressing the claims asserted in this suit on behalf of the Class members.

Absent settlement, the parties would be compelled to engage in significant additional pretrial preparation and discovery—including production and review of electronically stored information, including emails, which the parties anticipate would be voluminous; production and review of all third-party discovery; extensive fact, expert, third-party, and Rule 30(b)(6) depositions; preparation of expert reports; and filing and briefing Plaintiffs' motion for class

certification—followed by dispositive motions and trial, and post-trial submissions.  This work would take a significant additional amount of attorney time and judicial resources.  Any appeal, including of class certification, would significantly increase this work as well.

In the context of this case, the value of immediate relief is immense.  The significant relief in the Settlement Agreement promises structural and outcome improvements in critical areas of housing stability and mental health services for a class of vulnerable children in foster care.  Plaintiffs believe that waiting for the completion of prolonged litigation before implementing such changes would result in substantial additional harm to Class members. Welch Decl. ¶ 14; Burns-Bucklew Decl. ¶ 9.  Settlement allows the Class members to experience the benefits of the Settlement Agreement as soon as possible and to avoid the risk of delayed relief or ultimately being denied relief.

### 4.   The parties believe the Settlement Agreement is fair and reasonable.

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).  "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."  *Id.* at 1183 (citation omitted).  "[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel."  *Id.* (alteration in original) (quoting *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993)); *see also Saunders v. Berks Credit and Collections, Inc.*, No. CIV. 00-3477, 2002 WL 1497374, at *10 (E.D. Pa. July 11, 2002) ("After inquiring into the negotiation process the Court is confident there was no collusion. . . . The Court is therefore deferential to the reasoned judgment of the well-informed attorneys.").

Plaintiffs' counsel in this case has extensive experience in complex civil litigation, including in litigating class actions on behalf of children in foster care, and negotiating and implementing settlements of such cases. Welch Decl. ¶¶ 2-10; Lustbader Decl. ¶¶ 3-8; Woody Decl. ¶¶ 2-12; Burns-Bucklew Decl. ¶¶ 2-7; Schechtman Decl. ¶¶ 2-5. Based on their experience and the specific facts of this case, Plaintiffs' counsel have concluded that the Settlement Agreement is of significant benefit to the Class and represents a fair, reasonable, and adequate compromise of the claims of the Class members. Welch Decl. ¶ 14; Lustbader Decl. ¶ 10; Woody Decl. ¶ 14; Burns-Bucklew Decl. ¶ 9; Schechtman Decl. ¶ 7.

Counsel for both parties—seasoned plaintiffs' class action and defense attorneys, respectively—have fully evaluated the Settlement Agreement, weighed the strengths, weaknesses, and risks of each side's position, utilizing their knowledge from prior similar litigation, and concluded the Settlement Agreement is fair and reasonable. Thus, this factor favors preliminary approval.

Because all relevant factors weigh in favor, the Court should grant preliminary approval to the parties' Settlement Agreement.

## V.   THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL.

Federal Rule of Civil Procedure 23(g) requires that, when certifying a case as a class action, the Court must appoint class counsel. The Rule requires that, when appointing class counsel, the Court must consider: (1) counsel's work in identifying or investigating claims; (2) counsel's experience in handling the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' counsel respectfully request that the Court appoint them as Class Counsel for purposes of approval and administration of the proposed settlement.  The proposed Class Counsel have extensive experience in complex and class action litigation in Kansas and nationally, as well as in representing youth in the child welfare system.  Welch Decl. ¶¶ 2-10; Lustbader Decl. ¶¶ 3-8; Woody Decl. ¶¶ 2-12; Burns-Bucklew Decl. ¶¶ 2-7; Schechtman Decl. ¶¶ 2-5.  Plaintiffs' counsel have dedicated substantial work to identifying and prosecuting the claims of the putative class thus far and are dedicated to ensuring the case will continue to receive the necessary focus and resources to protect the rights of Class members.  Welch Decl. ¶ 9; Lustbader Decl. ¶ 9; Woody Decl. ¶ 13; Burns-Bucklew Decl. ¶ 8; Schechtman Decl. ¶ 5.

## VI.   THE PROPOSED CLASS NOTICE AND NOTICE PLAN SHOULD BE APPROVED.

Under Federal Rule of Civil Procedure 23(e)(1), a court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  *See DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005).

The parties in this case have agreed to a Notice of Proposed Class Action Settlement attached as Exhibit B.  The proposed Notice summarizes the topics addressed by the proposed Settlement Agreement, provides a process for the publication of notice of the settlement and instructions on how to obtain full copies of the Settlement Agreement, and advises recipients what to do if they have questions.  The Notice describes the procedures for persons who wish to be heard in favor of or in objection to the Settlement Agreement and will specify the date, time, and place of the formal fairness hearing to be set by the Court.

The form of proposed Notice is clear and in plain language for Class members, their representatives, and other stakeholders who may be interested in its terms.  The parties have

provided a detailed proposal for dissemination of the Notice in the Proposed Order.  The parties'

proposal would include, among other things, posting the Notice in various locations that the

Class members or their representatives are likely to go, and sending the Notice to placement

providers, parents, attorneys for Class members, and older Class members in independent or

transitional living placements.

The proposed Notice comports with Rule 23 and the requirements of due process, and it

should be approved.

## VII.   THE COURT SHOULD ESTABLISH A SCHEDULE FOR FINAL APPROVAL.

The parties request that the Court set a schedule for notice to the Class and final approval

of the Settlement Agreement as follows:

| Event | Date |
|---|---|
| Court's Order on Preliminary Approval | To be determined by the Court |
| Completion of Notice Plan | 5 weeks after the Court's Order of Preliminary Approval |
| Motion for Final Settlement Approval and Plaintiffs' Motion for Attorneys' Fees and Costs | 4 weeks after Completion of Notice Plan |
| Objection Deadline; Deadline for Class Members' Notification of Intent to Appear at the Final Approval Hearing | 6 weeks after Completion of Notice Plan |
| Plaintiffs to Submit to the Court all Submissions in Support or in Objection to the Settlement Agreement Pursuant to the Order of Preliminary Approval; Parties' Response(s) to Submissions in Support or in Objection to the Settlement Agreement Pursuant to the Order of Preliminary Approval (if any) | 2 weeks after Objection Deadline |
| Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs | 4 weeks after Plaintiffs' Motion for Attorneys' Fees and Costs |
| Plaintiffs' Reply in Support of Motion for Attorneys' Fees and Costs | 4 weeks after Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs |
| Final Approval Hearing | 2 weeks after Plaintiffs' Reply in Support of Motion for Attorneys' Fees and Costs |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying unopposed Proposed Order provisionally certifying the Class; appointing Class Counsel; granting preliminary approval of the proposed Settlement Agreement; approving the form and manner of the Notice of Proposed Class Action Settlement; and setting deadlines and a hearing for the purpose of deciding whether to grant final approval of the Settlement Agreement.

Dated: July 27, 2020

Respectfully submitted,

**KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.**

 /s/ Teresa A. Woody
Teresa A. Woody
KS Bar ID 16949
Larry R. Rute
KS Bar ID No. 8105
211 East 8th Street, Suite D
Lawrence, KS 66044
P: (785) 856-0917
twoody@kansasappleseed.org
larry@adrmediate.com

**LAW OFFICE OF LORETTA BURNS-BUCKLEW**
Loretta Burns-Bucklew
MO Bar ID No. 32053
KS District Bar No. 78800
401 West 89th Street
Kansas City, MO 64114
P: (816) 384-1198
loribblawkc@gmail.com

**NATIONAL CENTER FOR YOUTH LAW**
Leecia Welch (admitted *pro hac vice*)
CA Bar ID No. 208741
Poonam Juneja (admitted *pro hac vice*)
CA Bar ID No. 300848
Freya Pitts (admitted *pro hac vice*)

CA Bar ID No. 295878
1212 Broadway, Suite 600
Oakland, CA 94612
P: (510) 835-8098
F: (510) 835-8099
lwelch@youthlaw.org
pjuneja@youthlaw.org
fpitts@youthlaw.org

**CHILDREN'S RIGHTS, INC.**
Ira Lustbader (admitted *pro hac vice*)
NY Bar ID No. 2516946
Marissa C. Nardi (admitted *pro hac vice*)
NY Bar ID No. 5173265
Jonathan M. King (admitted *pro hac vice*)
NY Bar ID No. 5119847
Stephen A. Dixon (admitted *pro hac vice*)
LA Bar ID No. 18185
88 Pine Street, 8th Floor
New York, NY 10005
P: (212) 683-2210
F: (212) 683-4015
ilustbader@childrensrights.org
mnardi@childrensrights.org
jking@childrensrights.org
sdixon@childrensrights.org

**DLA PIPER LLP (US)**
Caryn G. Schechtman (admitted *pro hac vice*)
NY Bar ID No. 2910420
Jeffrey Rotenberg (admitted *pro hac vice*)
NY Bar ID No. 3984994
Joshua Kane (admitted *pro hac vice*)
NY Bar ID No. 4973400
1251 Avenue of the Americas
New York, NY 10020
P: (212) 335-4593
F: (212) 884-8593
caryn.schechtman@dlapiper.com
jeffrey.rotenberg@dlapiper.com
joshua.kane@dlapiper.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on July 27, 2020, to be served by the operation of the Court's CM/ECF electronic filing system upon all parties.

DATED: July 27, 2020

/s/ Teresa A. Woody
Teresa A. Woody
**Attorney for Plaintiffs**