## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| **M.B.** and **S.E.** through their next friend Katharyn McIntyre, **R.M.** through his next friend Allan Hazlett, **C.A.** through his next friend Allan Hazlett, **E.B.** through his next friend Allan Hazlett, **J.P.** through her next friend Allan Hazlett, **Z.Z.** through her next friend Ashley Thorne, and **M.A.** through his next friend Ashley Thorne, for themselves and those similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No. 2:18-cv-02617-DDC-GEB |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| **Laura Howard** in her official capacity as Kansas Department for Children and Families Secretary, **Dr. Lee A. Norman** in his official capacity as Kansas Department of Health and Environment Secretary, and **Laura Howard** in her official capacity as Kansas Department for Aging and Disability Services Secretary, | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.    BRIEF OVERVIEW OF THE LITIGATION ......................................................... 2

II.   SUMMARY OF THE SETTLEMENT AGREEMENT........................................... 4

III.  CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED. .......... 6

    A. THE CLASS SATISFIES EACH REQUIREMENT OF RULE 23(A). .............................................. 6

       1. The Class satisfies the numerosity requirement............................................................. 7

       2. The Class satisfies the commonality requirement. ......................................................... 7

       3. The Class satisfies the typicality requirement. .............................................................. 8

       4. The Class satisfies the adequacy requirement. .............................................................. 8

    B. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(2)............................................ 9

IV.  THE CLASS HAS BEEN PROVIDED NOTICE AS DIRECTED BY THE COURT. ........ 10

V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT
AGREEMENT. ................................................................................................................. 12

    A. THE SETTLEMENT AGREEMENT WAS FAIRLY AND HONESTLY NEGOTIATED. ...................... 13

    B. SERIOUS QUESTIONS OF LAW AND FACT EXIST. ................................................................. 14

    C. THE VALUE OF IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF RELIEF. ..... 15

    D. THE PARTIES BELIEVE THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE.............. 16

VI.  CONCLUSION................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 625 (1997)............................................................................................. 8

*Amoco Prod. Co. v. Fed. Power Comm'n*,
   465 F.2d 1350 (10th Cir. 1972) ............................................................................... 13

*Bailes v. Lineage Logistics, LLC*,
   No. 15-CV-02457-DDC-TJJ, 2016 WL 7242501 (D. Kan. Dec. 15, 2016).............. 1

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) ................... 13

*D.G. ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ....................................................................... 7, 8, 10

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ................................................................................... 13

*Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*,
   No. 14-2378, 2015 WL 4523806 (D. Kan. July 27, 2015) .................................... 13

*Hershey v. ExxonMobil Oil Corp.*,
   2012 WL 5306260, No. 07-1300-JTM (D. Kan. Oct. 26, 2012) ........................... 13

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004) ................................................................................. 6

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d 1133 (D. Colo. 2009).................................................................. 15

*In re Sprint Corp. ERISA Litig.*,
   443 F. Supp. 2d 1249 (D. Kan. 2006).............................................................. 6, 15

*In re Toys R Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000) ......................................................................... 13

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ............................................................................. 12

*Marcus v. Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002)............................................................ 16, 17

*Nieberding v. Barrette Outdoor Living, Inc.*,
   302 F.R.D. 600 (D. Kan. 2014) .............................................................................. 7

*Rodriquez v. Hermes Landscaping, Inc.*,
   No. 17-2142, 2018 WL 4257712 (D. Kan. Sept. 5, 2018)....................................... 8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ............................................................................. 12

*Saunders v. Berks Credit and Collections, Inc.*,
   No. CIV. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002) ......................... 17

*Shook v. Board of County Comm'rs of County of El Paso*,
   543 F.3d 597 (10th Cir. 2008) .............................................................................. 10

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ...................................................................... 17

## <u>TABLE OF AUTHORITIES (cont.)</u>

**<u>Cases (cont.)</u>**

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................. 7

*Zapata v. IBP, Inc.*,
   167 F.R.D. 147 (D. Kan. 1996) ................................................................................ 7

## **<u>Rules and Statutes</u>**

Fed. R. Civ. P. 23 ................................................................................................... passim
Fed. R. Civ. P. 41 ........................................................................................................... 4
Fed. R. Civ. P. 65 ........................................................................................................... 4
Kan. Stat. Ann. § 38-2242 .............................................................................................. 6

## **<u>Other Authorities</u>**

Manual for Complex Litigation (Fourth) § 21 (2004) ..................................................... 6

**INTRODUCTION**

Plaintiffs M.B. and S.E. through their next friend Katharyn McIntyre, R.M., C.A., E.B., and J.P. through their next friend Allan Hazlett, and Z.Z. and M.A. through their next friend Ashley Thorne ("Plaintiffs") hereby seek an order from the Court confirming certification of the proposed class and granting final approval of the parties' settlement agreement, ECF No. 139-1 ("Settlement Agreement").

On September 9, 2020, this Court entered an Order preliminarily approving the terms of the Settlement Agreement as "fair, reasonable, and adequate" in accordance with Federal Rule of Civil Procedure 23(e)(2).  ECF No. 140 ("Order") ¶ 2.  The Court's Order also preliminarily certified the proposed class for settlement purposes; appointed Class Counsel; approved the proposed notice and notice plan; and set a schedule for submitting comments in objection to or in support of the Settlement Agreement, briefing Plaintiffs' request for attorneys' fees and costs, and obtaining final approval of the Settlement Agreement.  *See Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 7242501, at *4 (D. Kan. Dec. 15, 2016) (describing the two-step process for court approval of class action settlements).

The parties have fully complied with the notice requirements and plan ordered by the Court.  *See* Affidavit of Compliance of Kristine Wheat, ECF No. 141-1; Affidavit of Compliance of Brian M. Vasquez, ECF No. 141-2; Affidavit of Compliance of Sherry C. Diel, ECF No. 141-3 (all certifying Defendants' compliance with the notice requirements in the Order); Declaration of Leecia Welch ("Welch Decl.") ¶ 2 (describing Plaintiffs' counsel's posting of the notice and compliance with the Order).  In accordance with the Court's schedule, Plaintiffs will submit a

supplement to this brief on or before December 14, 2020, addressing all comments regarding the

Settlement Agreement submitted by December 7, 2020.  *See* Order ¶¶ 14, 18.[1]

Plaintiffs respectfully request that, following the final approval hearing, the Court:

(1) confirm certification of the class for settlement purposes; and (2) grant final approval of the

Settlement Agreement.

## I.    <u>BRIEF OVERVIEW OF THE LITIGATION</u>

Plaintiffs, a Class of all children in the foster care custody of the Kansas Department for

Children and Families ("DCF"),[2] filed this suit in November 2018 seeking declaratory and

injunctive relief against the Secretary of DCF, the Secretary of the Kansas Department for Aging

and Disability Services ("KDADS"), and the Secretary of the Kansas Department of Health and

Environment ("KDHE"), each in their official capacity.[3]  ECF No. 1.  Plaintiffs alleged that

Defendants have violated their rights under the Fourteenth Amendment  by subjecting them to

extreme housing disruption and numerous short-term foster care placements. ECF No. 63 ¶¶ 243-

56.   Plaintiffs have also alleged that Defendants have violated their rights under the federal

Medicaid Act by failing to provide them with necessary mental health and behavioral health

---

[1] Concurrently with this motion, Plaintiffs also submit their motion in support of reasonable attorneys' fees and expenses, which will be followed by any brief in opposition by Defendants by December 14, 2020, and Plaintiffs' reply by December 21, 2020.  *See* Order ¶ 12.  This briefing schedule allows the Court to rule on Plaintiffs' motion for reasonable attorneys' fees and expenses in connection with consideration of the motion for final approval, if it so chooses.

[2] The original named Plaintiffs were ten children in DCF custody.  ECF No. 1.  In September 2019, Plaintiffs amended their complaint to remove some named Plaintiffs who had exited DCF custody, and to add new named Plaintiffs.  ECF Nos. 57, 63.  On July 8, 2020, the parties stipulated to dismissing the claims of four named Plaintiffs who had recently turned eighteen years old.  ECF No. 132.

[3] The complaint also named the Kansas governor as a Defendant.  On June 3, 2020, the Court granted Governor Laura Kelly's motion to dismiss on jurisdictional grounds.  ECF No. 118.

screening, diagnostic services, evaluation, and treatment.  *Id.*  Defendants have denied all allegations.  ECF No. 74.

The parties have reached a comprehensive Settlement Agreement resolving Plaintiffs' claims in their entirety.  Plaintiffs' negotiation on behalf of the Class has been well-informed by their extensive investigation and discovery efforts.  Plaintiffs filed their lawsuit following an approximately year-long investigation of Kansas's child welfare system, including dozens of stakeholder interviews across the state and hundreds of hours of research and data analysis. Declaration of Leecia Welch in Support of Preliminary Approval Motion, ECF No. 139-3 ("Welch Prelim. Approval Decl.") ¶ 11.  Since filing, the parties have engaged in significant discovery efforts, including multiple sets of document requests and interrogatories; production and review of over 75,000 pages of documents; eight third party document subpoenas; and a Rule 30(b)(6) deposition of DCF.  *Id.* ¶ 12; ECF Nos. 50, 100, 104, 106, 108-11, 114, 115, 119-22.

The Settlement Agreement is the product of lengthy negotiations.  The parties exchanged initial proposals in May and July of 2019.  Welch Prelim. Approval Decl. ¶ 13.  They then participated in in-person mediation sessions facilitated by a skilled neutral subject matter expert, Kevin Ryan of Public Catalyst, on November 12, 2019, December 15 and 16, 2019, February 7, 2020, and February 25 and 26, 2020.  ECF Nos. 90-1, 103-1.  Although the parties reached an impasse in late February 2020, they re-engaged in settlement negotiations in May 2020, exchanging settlement drafts, and then meeting by videoconference on June 4, 10, 11, and 18, 2020.  ECF No. 103-1; Welch Prelim. Approval Decl. ¶ 13.  These renewed efforts resulted in the Settlement Agreement executed by all parties on July 9, 2020, submitted to the Court on July 27, 2020, ECF No. 139-1, and preliminarily approved on September 9, 2020, ECF No. 140.

The Settlement Agreement contemplates dismissal of the pending claims, retention of Court jurisdiction for purposes of enforcing the terms of the Settlement Agreement, and conformance with Federal Rules of Civil Procedure 23(e), 41(a), and 65(d).  Settlement Agreement §§ 4.6, 4.7, 5.2.2, 5.2.6.

## II.    SUMMARY OF THE SETTLEMENT AGREEMENT

As explained in more detail in Plaintiffs' preliminary approval motion, the parties' Settlement Agreement addresses the issues raised in this action through a series of key substantive commitments.  *See* ECF No. 139 at 5–8.

First, the Settlement Agreement requires that Defendants must effectuate the following practice improvements: (1) ending the practice of housing children in inappropriate locations such as agency offices and hotels, Settlement Agreement § 2.5.1; (2) ensuring that placements do not exceed licensed capacity, *id.* § 2.5.2; (3) ending placement-instability-related delay in access to medically necessary mental health services, *id.* § 2.5.3; (4) ensuring access to crisis intervention services statewide, *id.* § 2.5.4; and (5) ending night-to-night placements and short-term placements lasting less than fourteen days, *id.* § 2.5.5.  The Settlement Agreement requires that Defendants must achieve substantial compliance with these practice improvements and then continue to maintain compliance with each practice improvement for an additional twelve-month period, as validated by a neutral expert, in order to exit from that requirement.  *Id.* §§ 2.2, 2.4.

Second, Defendants must also, over a period of three to four years, achieve and maintain specified measurable benchmarks for: (1) a rate of placement moves, *id.* § 2.9.1; (2) addressing mental health and behavioral health treatment needs, *id.* § 2.9.2; (3) ensuring stability of current placements, *id.* § 2.9.3; (4) limiting placement changes over twelve months, *id.* § 2.9.4; and (5) providing mental health and trauma screens on entry to state care, *id.* § 2.9.5.  Similar to the

practice improvements, the Settlement Agreement requires that Defendants achieve these outcomes and then continue to maintain compliance for an additional twelve-month period, as validated by a neutral expert, in order to exit from that requirement.  *Id.* §§ 2.6, 2.8.

Third, the Settlement Agreement's obligations will be incorporated into Defendants' grants for foster care case management and will be binding whether the relevant activities are performed by Defendants, their employees, or their third-party contractors or grantees.  *Id.* §§ 2.1.1, 6.5.

Fourth, the Settlement Agreement requires the creation of a community accountability structure, which must include numerous stakeholders outside of the state agencies, such as foster care providers, parents, youth with involvement in the child welfare system, and professionals who provide services to such youth and families.  *Id.* § 2.1.2.

Fifth, Judith Meltzer and the Center for the Study of Social Policy, a highly respected child welfare policy group with substantial experience as court-appointed neutrals, have been jointly chosen by the parties to independently review, validate, and report on Defendants' performance pursuant to the terms of the Settlement Agreement.  *Id.* §§ 1.15, 3.1.

Additionally, Mediator Karen Baynes-Dunning, a former juvenile court judge with substantial experience as a federal court-appointed monitor in child welfare cases, has been jointly chosen by the parties to oversee a confidential mediation process to address disputes before the parties seek Court intervention.  *Id.* §§ 1.14, 4.1-4.7.  Class Counsel may bypass the mediation process and seek immediate relief from the Court in limited circumstances, including if there is an urgent and substantial risk of harm to Class members without time for negotiations. *Id.* § 4.7.

Finally, the Settlement Agreement provides for Class Counsel's "reasonable fees and expenses," in an amount to be determined by the Court. *Id.* § 1.4.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED.

The Court has certified the following Class for settlement purposes, based on a preliminary finding that it meets the requirements of Federal Rule of Civil Procedure 23:

> All children who are now, or in the future will be, in the protective custody of the Department for Children and Families pursuant to Kan. Stat. Ann. § 38-2242(c)(1).[4]

ECF No. 140 ¶¶ 3, 4.  Plaintiffs request that the Court confirm certification of this Class.

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004).  After the fairness hearing, the Court must make a final determination whether the proposed class satisfies the requirements of Rule 23(a) and (b)(2).  *See* Manual for Complex Litigation (Fourth) §§ 21.634-35 (2004); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1255 (D. Kan. 2006).  For the purposes of settlement, the parties agree that the Class meets the requirements of Rule 23(a) and (b)(2).  *See* Settlement Agreement § 1.2.

### A.   The Class Satisfies Each Requirement of Rule 23(a).

Rule 23(a) allows "[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all members only if" the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

---

[4] The Amended Complaint identified two classes: a General Class comprising all children in the custody of DCF, and a "Mental Health Treatment Subclass" consisting of only children who have or will have an identified behavioral or mental health need.  ECF No. 63 ¶¶ 109-25. Because the Settlement Agreement includes requirements related to the provision of behavioral and mental health screening and services for all Class members, the parties do not seek certification of a Mental Health Treatment Subclass for settlement purposes.

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This proposed Class satisfies each requirement for the purposes of settlement.

### 1. The Class satisfies the numerosity requirement.

The Class comprises more than 7,000 children, and it easily satisfies the numerosity requirement. ECF No. 63 ¶ 111 (defining the Class's size); ECF No. 74 ¶ 111 (same); *see Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014) ("A class of at least 233 people is sufficiently large that joinder of all members is impracticable."). It would be impracticable to require all Class members, who are minor children across the state, to prosecute separate suits seeking declaratory and injunctive relief. *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 157 (D. Kan. 1996) (citation omitted) ("Besides size, other factors relevant to the practicality of joinder include: the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members.").

### 2. The Class satisfies the commonality requirement.

The Class meets the commonality requirement because its members' claims depend on at least one common contention of fact or law that can resolve central issues in one stroke. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). Common factual questions that can be resolved on a class-wide basis include whether Defendants have policies, practices, customs, or patterns of subjecting youth in their custody to extreme housing disruption and whether Defendants have failed to provide access to behavioral health, mental health, and trauma screening and services.

The Class members also share the common legal questions of whether Defendants' alleged actions and inactions violate their constitutional and statutory rights.

    **3.**  **The Class satisfies the typicality requirement.**

The Named Plaintiffs' claims meet the typicality requirement because they arise from the same factual nexus as the claims of the rest of the Class: the alleged risk of harm stemming from Defendants' alleged policies and practices of extreme housing disruption and failure to provide adequate mental and behavioral health screening and services. *D.G.*, 594 F.3d at 1199 ("typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances"). The Named Plaintiffs' claims are also based on the same legal theories as those of the rest of the Class, namely that Defendants' alleged policies and practices violate their substantive due process right to be free from harm while in state custody and deprive them of their rights under the Medicaid Act. *See id.* (holding typicality requirement was met for a similar class of children in foster care).

    **4.**  **The Class satisfies the adequacy requirement.**

Plaintiffs, through their next friends, and their counsel satisfy the adequacy requirement because they are committed to vigorously and competently protecting the interests of the Class and have no interests that would conflict with the interests of other Class members. *See Rodriquez v. Hermes Landscaping, Inc.*, No. 17-2142, 2018 WL 4257712, at *4 (D. Kan. Sept. 5, 2018); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiffs have demonstrated their commitment to the Class through their substantial efforts throughout this litigation and through their negotiation of the Settlement Agreement, which provides substantial benefits to the Class. Plaintiffs share the same claims, arising out of the same common course of

conduct and based upon the same legal theories as the other Class members, and their interests are aligned with those of the Class.  Further, each next friend, on behalf of the Named Plaintiffs whom he or she represents, is dedicated to improving Defendants' policies and practices, which pose the same risk of harm to Plaintiffs and other Class members.

In addition, Plaintiffs' counsel are deeply committed to representing the Class, have demonstrated their willingness to vigorously pursue the claims brought here, and have substantial experience in handling complex class actions, including suits on behalf of children in foster care asserting claims similar to those in this suit.  Welch Prelim. Approval Decl. ¶¶ 2-10; Declaration of Ira Lustbader, ECF No. 139-4 ("Lustbader Prelim. Approval Decl.") ¶¶ 3-9; Declaration of Teresa A. Woody, ECF No. 139-5 ("Woody Prelim. Approval Decl.") ¶¶ 2-13; Declaration of Loretta Burns-Bucklew, ECF No. 139-6 ("Burns-Bucklew Prelim. Approval Decl.") ¶¶ 2-8; Declaration of Caryn Schechtman, ECF No. 139-7 ("Schechtman Prelim. Approval Decl.") ¶¶ 2-5.

**B.  <u>The Class Satisfies the Requirements of Rule 23(b)(2).</u>**

A party seeking class certification pursuant to Rule 23(b)(2) must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) is met.  "[D]efendants' [alleged] actions or inactions are 'based on grounds generally applicable to all class members" in that "all class members have been placed in [DCF's] foster care program," and they are therefore cared for in a system that allegedly subjects them to an impermissible risk of harm due to the practice of extreme placement disruption and the lack of access to behavioral and mental health screenings, diagnosis, and treatment.  *D.G.,*

594 F.3d at 1199, 1201 (quoting *Shook v. Board of County Comm'rs of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008)).  As demonstrated by the parties' detailed Settlement Agreement, these alleged harms can be remedied by injunctive relief that is "appropriate for the class as a whole."  *Id.* at 1199 (quoting *Shook*, 543 F.3d at 604).  Appropriate injunctive relief in this case includes, for example: ending the practice of housing children in inappropriate locations such as agency offices and hotels; eliminating the use of night-to-night placements and placements lasting less than fourteen days; ensuring access to crisis intervention services for children statewide; and ensuring prompt provision of necessary mental health services.

## IV.    THE CLASS HAS BEEN PROVIDED NOTICE AS DIRECTED BY THE COURT.

The Federal Rules provide that "the court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement agreement]."  Fed. R. Civ. P. 23(e)(1)(B).  In its September 9 Order, the Court previously approved the parties' proposed form of notice, which, among other things, defined the Class, summarized the proposed Settlement Agreement, provided instructions to obtain copies of the Settlement Agreement, and advised recipients what to do if they have questions.  *See* Notice of Proposed Class Action Settlement, ECF No. 139-2 ("Notice").  The Notice also described the procedures for submitting comments and objections and requesting to speak at the final approval hearing, and specified the date, time, and place of the hearing.  *Id.*  The Notice used clear and plain language for Class members, their representatives, and other stakeholders who may be interested in its terms.  *Id.*

Consistent with the Settlement Agreement and the Court's September 9 Order, ECF No. 140, the parties provided notice to the Class on or before October 9, 2020, in the following ways: (1) posting a copy of the Order and the Notice on the websites of DCF, KDHE, KDADS, the National Center for Youth Law ("NCYL"), and Kansas Appleseed; (2) posting the Notice in

DCF, KDHE, and KDADS offices; and (3) emailing or mailing the Notice to: (a) certain KDHE and KDADS staff; (b) the Kansas Office of Judicial Administration; (c) each grantee or contractor providing foster care case management services to Class members; (d) all placement providers for children in DCF custody; (e) all children in an independent or transitional living arrangement or the Independent Living program; (f) Presiding Judges and Chief Juvenile Officers for each Kansas Judicial District; (g) each congregate care placement, group home, residential counseling center, residential treatment center, and child placing agency utilized by Defendants; (h) the Guardian Ad Litem Support Center of Kansas Legal Services; (i) any Kansas Court Appointed Special Advocates Offices; (j) the Kansas CASA organization; (k) the Kansas Bar Association; (l) the Children's Subcommittee of the Governor's Behavioral Health Services Planning Council; and (m) other child welfare-affiliated organizations. Affidavit of Compliance of Kristine Wheat, ECF No. 141-1; Affidavit of Compliance of Brian M. Vasquez, ECF No. 141-2; Affidavit of Compliance of Sherry C. Diel, ECF No. 141-3; Welch Decl. ¶ 2. In addition, the parties requested or directed many recipients to further post and/or distribute the Notice, including to Class members, Guardians ad Litem, foster care case management staff, parents, relative placements, and others.  Affidavit of Compliance of Kristine Wheat, ECF No. 141-1.

In its September 9 Order, the Court concluded that the parties' notice plan "protects the interests of the Named Plaintiffs, the Class, and Defendants," comprises "the best notices practicable under the circumstances," and is "reasonably calculated to apprise the Class of the proposed Settlement Agreement."  Order ¶ 9.  The Court further found that "the notice methodologies are reasonable and constitute due, adequate, and sufficient notice . . . and meet all applicable requirements of law, including . . . Federal Rule of Civil Procedure 23 and the Due Process Clause of the Fourteenth Amendment."  *Id.*

Objections, support, or comments from Class members or their legal representatives regarding the proposed Settlement Agreement may be submitted through December 7, 2020. *Id.* ¶ 14. As directed by the Court, on or before December 14, 2020, Class Counsel will supplement this brief with "all written submissions received from Class members, their legal representatives, or other interested parties, along with any written responses from Class Counsel to such submissions." *Id.* ¶ 18.

## V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT.

Under Rule 23(e), a class action settlement requires the Court's approval. Where, as here, the proposed settlement binds absent class members, it may be approved upon notice to those class members, after a hearing, and upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In the Tenth Circuit, courts must consider four factors in determining whether a settlement meets the requirements of Rule 23(e) and should be finally approved: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Here, all four factors weigh in favor of final approval, and the Court should therefore confirm its preliminary conclusion that the Settlement Agreement is fair, reasonable, and adequate for the Class. Order ¶ 2.

Whether to accept or reject a proposed settlement ultimately "fall[s] within the district courts' sound discretion." *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-

KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).  In exercising that discretion, there is a "strong presumption of favoring compromise."  *Hershey v. ExxonMobil Oil Corp.*, 2012 WL 5306260, No. 07-1300-JTM, at *1 (D. Kan. Oct. 26, 2012), *aff'd in part, appeal dismissed in part*, 550 F. App'x 566 (10th Cir. 2013).  This presumption is even stronger in complex class actions.  *See Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 WL 4523806, at *2 (D. Kan. July 27, 2015) ("The law favors compromise and settlement of class action suits.").  Settlement agreements are encouraged for policy reasons because they both "promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Hershey*, 2012 WL 5306260, at *1 (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354-55 (10th Cir. 1972).

## A. __The Settlement Agreement was fairly and honestly negotiated.__

The Settlement Agreement is the result of extensive negotiations conducted at arm's length and in good faith by seasoned counsel.  The parties' negotiations were lengthy, at times contentious, and largely overseen by a highly skilled and experienced mediator, Kevin Ryan, who is a subject matter expert in reform of child welfare systems.  Welch Prelim. Approval Decl. ¶ 13.  These arm's length negotiations support final approval here.  *See, e.g.*, *Ehrheart*, 609 F.3d at 594 ("The settlement agreement was negotiated through and executed by experienced counsel on both sides, following mediation with a well-respected and experienced mediator."); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator with a background in" the substantive area of law at issue.).

The parties have a thorough understanding of the facts and legal arguments at issue in this lawsuit.  Even before filing, Plaintiffs' counsel spent considerable time investigating this lawsuit.  During the two years the case has now been pending, the parties engaged in extensive initial discovery, including the production and review of more than 75,000 pages of documents. The parties' comprehensive settlement negotiations, which took place over the course of more than eight months, were well-informed by the knowledge their respective counsel had gained through their investigations of the law and facts of the case.  Based on this knowledge and counsel's extensive experience in litigating similar cases, the parties were able to make well-informed assessments regarding the strengths and weaknesses of their respective claims and defenses, as well as about the costs and risks of proceeding to trial.  *See, e.g.*, Welch Prelim. Approval Decl. ¶¶ 3, 5; Lustbader Prelim. Approval Decl. ¶¶ 6-7; Burns-Bucklew Prelim. Approval Decl. ¶ 6.

Because the parties engaged in well-informed, serious, non-collusive negotiations, this factor favors final approval.

## B.  Serious questions of law and fact exist.

This complex case implicates serious questions of law and fact.  Although Plaintiffs maintain that they would prevail on their claims at trial, litigating a class action case always carries some risk, especially where a class has not been certified by the court.  Here, Defendants have alleged numerous legal and factual defenses that, absent settlement, will require additional discovery and likely contested briefing on class certification, on summary judgment, and before and after trial.  Further, substantive due process and Medicaid Act claims are inherently complex.  The presence of serious questions of law and fact, as exist here, favors settlement "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the

possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Accordingly, this factor weighs in favor of final approval of the Settlement Agreement.

## C. __The value of immediate recovery outweighs the mere possibility of relief.__

The third factor is met because the value of immediate relief for the Class outweighs the possibility of future relief after protracted and expensive litigation.  In evaluating this factor, the Court weighs "[t]he value of the settlement . . . against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. at 1261 (D. Kan. 2006) (citation omitted).

Here, in the parties' Settlement Agreement, Defendants make substantial, enforceable commitments to redress the very issues that Plaintiffs filed suit to address.  Among other things, Defendants have agreed to specific changes in their practices, including agreeing to stop using night-to-night placements and other short-term placements lasting less than fourteen days, to end the practice of housing children in inappropriate locations such as agency offices and hotels, and to ensure children have prompt access to crisis intervention services statewide.  Settlement Agreement §§ 2.2-2.5.  Defendants have also agreed to concrete, enforceable outcomes regarding placements and mental and behavioral health services for children in foster care, including: (1) ensuring that at least 90% of Class members' mental and behavioral health treatment needs are addressed; (2) providing an initial mental health and trauma screen within thirty days of entering state care in at least 90% of cases; (3) ensuring that the rate of placement moves for Class members does not exceed 4.44 moves per 1,000 days in care; (4) ensuring that at least 90% of Class members are in a stable placement; and (5) limiting placement changes to one move

over twelve months for at least 90% of Class members.  *Id.* §§ 2.6-2.9.  These changes represent significant relief redressing the claims asserted in this suit on behalf of the Class members.

Absent settlement, the parties would need to engage in significant and time-consuming additional discovery and pretrial preparation.  Such work would include production and review of voluminous electronically stored information; production and review of third-party discovery; extensive fact and expert depositions; preparation of expert reports; briefing class certification, dispositive and pretrial motions; and preparation for a complicated, lengthy trial.  This work would demand a significant additional amount of attorney time and judicial resources as well as delay the implementation of reforms for the benefit of the Class.  Any appeal, including of class certification, would also significantly increase the work and further delay substantive relief for the Class.

In the context of this case, the value of immediate relief is immense.  The Settlement Agreement promises a class of vulnerable children in foster care both significant structural change and measurable improvements in outcomes in the critical areas of housing stability and mental health services.  Plaintiffs believe that waiting for the completion of prolonged litigation before implementing such changes would result in substantial additional harm to Class members. *See, e.g.*, Welch Prelim. Approval Decl. ¶ 14; Burns-Bucklew Prelim. Approval Decl. ¶ 9. Settlement allows the Class members to experience the benefits of the Settlement Agreement as soon as possible and to avoid the risk of delayed relief or ultimately being denied relief.

**D.  <u>The parties believe the Settlement Agreement is fair and reasonable.</u>**

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).  "Counsels' judgment as to the

fairness of the agreement is entitled to considerable weight." *Id.* at 1183 (citation omitted).

"[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday

morning quarterbacks in evaluating the judgment of counsel." *Id*. (alteration in original)

(quoting *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993)); *see also*

*Saunders v. Berks Credit and Collections, Inc.*, No. CIV. 00-3477, 2002 WL 1497374, at *10

(E.D. Pa. July 11, 2002) ("After inquiring into the negotiation process the Court is confident

there was no collusion. . . . The Court is therefore deferential to the reasoned judgment of the

well-informed attorneys.").

Plaintiffs' counsel in this case has extensive experience in complex civil litigation,

including in litigating class actions on behalf of children in foster care, and negotiating and

implementing settlements of such cases. *See* Welch Prelim. Approval Decl. ¶¶ 2-10; Lustbader

Prelim. Approval Decl. ¶¶ 3-8; Woody Prelim. Approval Decl. ¶¶ 2-12; Burns-Bucklew Prelim.

Approval Decl. ¶¶ 2-7; Schechtman Prelim. Approval Decl. ¶¶ 2-6. Based on their experience

and the specific facts of this case, Plaintiffs' counsel have concluded that the Settlement

Agreement is of significant benefit to the Class and represents a fair, reasonable, and adequate

compromise of the claims of the Class members. Welch Prelim. Approval Decl. ¶ 14; Lustbader

Prelim. Approval Decl. ¶ 10; Woody Prelim. Approval Decl. ¶ 14; Burns-Bucklew Prelim.

Approval Decl. ¶ 9; Schechtman Prelim. Approval Decl. ¶ 7.

Counsel for the parties—seasoned plaintiffs' class action and defense attorneys—have

weighed the strengths, weaknesses, and risks of each side's position and concluded the

Settlement Agreement is fair and reasonable. Accordingly, the fourth and final factor also favors

approval.

VI.    **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying unopposed Proposed Order confirming certification of the Class for settlement purposes and granting final approval of the Settlement Agreement.

Dated: November 30, 2020

                        Respectfully submitted,

**KANSAS APPLESEED CENTER FOR LAW AND JUSTICE, INC.**

*/s/ Teresa A. Woody*
Teresa A. Woody
KS Bar ID 16949
Larry R. Rute
KS Bar ID No. 8105
211 East 8th Street, Suite D
Lawrence, KS 66044
P: (785) 856-0917
twoody@kansasappleseed.org
larry@adrmediate.com

**LAW OFFICE OF LORETTA BURNS-BUCKLEW**
Loretta Burns-Bucklew
MO Bar ID No. 32053
KS District Bar No. 78800
401 West 89th Street
Kansas City, MO 64114
P: (816) 384-1198
loribblawkc@gmail.com

**NATIONAL CENTER FOR YOUTH LAW**
Leecia Welch (admitted *pro hac vice*)
CA Bar ID No. 208741
Poonam Juneja (admitted *pro hac vice*)
CA Bar ID No. 300848
Freya Pitts (admitted *pro hac vice*)
CA Bar ID No. 295878

1212 Broadway, Suite 600
Oakland, CA 94612
P: (510) 835-8098
F: (510) 835-8099
lwelch@youthlaw.org
pjuneja@youthlaw.org
fpitts@youthlaw.org

**CHILDREN'S RIGHTS, INC.**
Ira Lustbader (admitted *pro hac vice*)
NY Bar ID No. 2516946
Marissa C. Nardi (admitted *pro hac vice*)
NY Bar ID No. 5173265
Jonathan M. King (admitted *pro hac vice*)
NY Bar ID No. 5119847
Stephen A. Dixon (admitted *pro hac vice*)
LA Bar ID No. 18185
88 Pine Street, 8th Floor
New York, NY 10005
P: (212) 683-2210
F: (212) 683-4015
ilustbader@childrensrights.org
mnardi@childrensrights.org
jking@childrensrights.org
sdixon@childrensrights.org

**DLA PIPER LLP (US)**
Caryn G. Schechtman (admitted *pro hac vice*)
NY Bar ID No. 2910420
Jeffrey Rotenberg (admitted *pro hac vice*)
NY Bar ID No. 3984994
Joshua Kane (admitted *pro hac vice*)
NY Bar ID No. 4973400
1251 Avenue of the Americas
New York, NY 10020
P: (212) 335-4593
F: (212) 884-8593
caryn.schechtman@dlapiper.com
jeffrey.rotenberg@dlapiper.com
joshua.kane@dlapiper.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on November 30, 2020, to be served by the operation of the Court's CM/ECF electronic filing system upon all parties.

DATED: November 30, 2020

*/s/ Teresa A. Woody*
Teresa A. Woody
**Attorney for Plaintiffs**