## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **M.B.** and **S.E.** through their next friend Katharyn McIntyre, **et al.,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **Laura Howard** in her official capacity as Kansas Department for Children and Families Secretary, **et al.,** <br><br> **Defendants.** | Case No. 18-2617-DDC-GEB |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (Doc. 150). Plaintiffs ask the court to certify the class for settlement purposes and grant final approval of the Settlement Agreement. *Id.* at 6. After a Final Settlement Hearing held on January 22, 2021, the matter is fully briefed. For the reasons stated below, the court grants plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

### I.      Background

Plaintiffs, minor children in foster care custody of the Kansas Department for Children and Families ("DCF"), filed suit in November 2018 seeking declaratory and injunctive relief against the Secretary of DCF, the Secretary of the Kansas Department for Aging and Disability Services ("KDADS"), and the Secretary of the Kansas Department of Health and Environment ("KDHE"). Doc. 1 at 1 (Compl.); Doc. 63 at 1 (Am. Compl.).[1] Plaintiffs assert two claims

---

[1]      Also, plaintiffs filed suit against Kansas Governor Laura Kelly in her official capacity. Doc. 63 at 1. But, "the court conclude[d] Eleventh Amendment immunity protects Governor Kelly from suit on

against defendants.  *First*, plaintiffs allege defendants violated the state's affirmative duties under the Fourteenth Amendment when it subjected children in foster care custody to extreme housing disruption and numerous short-term foster care placements.  Doc. 63 at 2, 66–67 (Am. Compl. ¶¶ 2, 243–47).  *Second*, plaintiffs assert defendants violated their rights under the federal Medicaid Act by failing to provide them with necessary mental health and behavioral health screening, diagnostic services, and treatment, including trauma-related screening and diagnostic services.  *Id.* at 3, 67–69 (Am. Compl. ¶¶ 6, 248–56).

"Plaintiffs filed their lawsuit following an approximately year-long investigation of Kansas's child welfare system[.]"  Doc. 150 at 7.  "Since filing, the parties have engaged in significant discovery efforts, including multiple sets of document requests and interrogatories; production and review of over 75,000 pages of documents; eight third party document subpoenas; and a Rule 30(b)(6) deposition of DCF."  *Id.*  The parties jointly retained Kevin Ryan of Public Catalyst for mediation as a skilled and neutral subject-matter expert.  Doc. 139 at 4; Doc. 55.  The parties met and mediated their disputes on November 12 and December 15 and 16 in 2019.  Doc. 90-1.  "In between sessions, the parties [] exchanged drafts of provisions of a possible settlement agreement."  *Id.*  The parties met again on February 7, 25, and 26 in 2020.  Doc. 103-1.  The mediator declared an impasse on February 28, *id.*, and so, the parties resumed discovery before eventually returning to settlement discussions in May 2020.  Doc. 139 at 5.  The parties met four times in June by teleconference and reached the proposed settlement agreement.  *Id.*  The parties then filed an Unopposed Motion for Preliminary Approval of the Settlement Agreement.  Doc. 139.  The court granted the motion and preliminarily approved class certification, the settlement agreement, and the proposed notice plan.  *See* Doc. 140.

---

the claims asserted by the Amended Complaint" and dismissed Governor Kelly from the suit for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Doc. 118 at 12–13.

Plaintiffs' next friends, on behalf of the proposed Settlement Class, and defendants have agreed, subject to court approval, to settle the above-captioned litigation on the terms set forth in the July 8, 2020, Settlement Agreement.  This court has reviewed and considered the Settlement Agreement,[2] as well as all exhibits to it, the greater record in the case, the briefs and arguments of counsel, and supporting exhibits.  The court also held a hearing on plaintiffs' motion on January 22, 2021.[3]

## II.    Class Certification

---

[2]     The referenced Settlement Agreement is attached as Exhibit 1 to this Memorandum and Order.

[3]     In accordance with the Order Preliminarily Approving the Class Action Settlement (Doc. 140 at 9), the Notice given to class members and other stakeholders listed the Settlement Approval Hearing's location as "9:00 A.M., IN COURTROOM 476, AT THE ROBERT J. DOLE FEDERAL COURTHOUSE, 500 STATE AVENUE, KANSAS CITY, KS 66101."   *Notice of Proposed Class Action Settlement,* KAN. DEP'T OF CHILDREN AND FAMILIES, http://www.dcf.ks.gov/Pages/default.aspx (last visited Jan. 22, 2021) (since removed); *see also* Doc. 140 at 9.  Given the COVID-19 pandemic and continued public health concerns presented by in-person hearings, the court convened a status conference on January 6, 2021, to discuss the Settlement Approval Hearing's logistics.  Doc. 164.  During this status conference, the court decided to conduct the hearing in substantial measure by video conference but also allow persons who wished to attend in person to do so.  The court directed the parties to supplement the original Notice with additional information about the virtual aspect of this hearing and provide known participants with information about how to connect and participate by video.

Unfortunately, three days before the settlement hearing, an electrical fire in the Dole United States Courthouse imposed substantial smoke and soot damage on the building.  The effects of the fire prevented the court from opening the noticed courtroom (or any of its other courtrooms) to host the in-person aspect of this hearing.  Fortunately, our judicial colleagues in the state court system stepped forward and solved this difficult equation.  Chief Judge Robert P. Burns and the talented professional staff of the District Court of Wyandotte County, Kansas, offered to host the Settlement Approval Hearing in Division 1 of its nearby courthouse.  Doc. 166.  Counsel ably supplemented the Notice and communicated with individuals interested in the hearing about its revised relocation.

At the noticed time and date, the court opened court and called the case in the Wyandotte County Courthouse.  Four members of the public appeared in person for the relocated hearing, and two of them addressed the court about the settlement.  The court also staffed the entry of the Dole Courthouse to notify any members of the public coming to that courthouse about the hearing's new location.  None appeared there.

In sum, individuals interested in participating in the hearing were offered many avenues for doing so, including video, phone, or in person.  Based on these accessible arrangements, the court finds the parties provided reasonable notice to the class as Fed. R. Civ. P. 23(e)(1)(B) requires.

Plaintiffs ask the court to certify the proposed class defined as "[a]ll children who are now, or in the future will be, in the protective custody of the Department for Children and Families" under Kan. Stat. Ann. § 38-2242(c)(1).  Doc. 150 at 10.  The court preliminarily approved the described class for settlement purposes, applying Fed. R. Civ. P. 23(a) and 23(b)(2).  *See* Doc. 140 at 3–4.  After reviewing the record and evidence presented, the court agrees the proposed class meets the requirements for class certification.

A district court may certify a class if the proposed class satisfies Rule 23(a)'s prerequisites and meets one of the categories described in Rule 23(b).  Fed. R. Civ. P. 23(a)–(b); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010).  The district court holds significant discretion when determining whether to certify a class.  *See Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008).

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The proposed class meets Rule 23(a)'s requirements.

*First*, the class consists of more than 7,000 children and so joinder of all members is impracticable.  Doc. 74 at 15–16 (Answer ¶ 111) (admitting "7,530 children in out-of-home placements as of September 2018, and that a similar number of children were in foster care in DCF custody" at that time).  *See also Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014) ("A class of at least 233 people is sufficiently large that joinder of all members is impracticable.").

*Second*, there are questions of law and fact common to the proposed class—minor children subject to DCF custody.  The Tenth Circuit, on similar facts, affirmed the district court's finding that common questions of law and fact existed among minor children in Oklahoma's foster care system.  *See DG ex rel. Stricklin*, 594 F.3d at 1196.  The Tenth Circuit reasoned, "[a]ll class members, by virtue of being in [Oklahoma's] foster care, are subject to the purportedly faulty monitoring policies of [Oklahoma's foster care], regardless of their individual differences; therefore, all members of the class are allegedly exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices."  *See id.*  Here, all members of the class—children in DCF's custody—are subject to DCF's alleged policies and practices of extreme housing disruption and lack of mental healthcare.  Questions of law and fact are common to all class members.

*Third,* the named plaintiffs' claims are typical of the proposed class.  In *DG ex rel. Stricklin*, the Tenth Circuit affirmed the district court's finding of typicality because both were subject to Oklahoma's foster care policies.  *Id.* at 1199.  The named plaintiffs and unnamed class members were placed at risk of "allegedly deficient monitoring practices" and so, "the harm and threat of harm suffered" by the named plaintiffs was typical of "all children in the class because all foster children are subject to [Oklahoma foster care's] challenged, agency-wide monitoring policies."  *Id*.  Here too, the named plaintiffs' claims of harm from housing disruption and absence of mental health care are typical of the proposed class.  All children in DCF's custody are subject to DCF's alleged policies and practices of extreme housing disruption and lack of adequate mental health care and treatment.  So, the typicality requirement is satisfied.

*Fourth*, named plaintiffs fairly and adequately represent the claims of the class because they share the same claims, arising out of defendants' alleged course of conduct.  Thus, the proposed class meets Rule 23(a)'s certification requisites.

Next, plaintiffs' motion asserts the class meets Rule 23(b)(2).  It requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole[.]"  Fed. R. Civ. P. 23(b)(2).  "First, plaintiffs must demonstrate defendants' actions or inactions are based on grounds generally applicable to all class members."  *DG ex rel Stricklin*, 594 F.3d at 1199 (citation and internal quotation marks omitted).  "Second, plaintiffs must also establish the injunctive relief they have requested is appropriate for *the class as a whole*."  *Id.* (citation and internal quotation marks omitted).  These requirements demand cohesiveness which has two elements.  *Id.*  "First, plaintiffs must illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required."  *Id.* at 1199–1200 (citation and internal quotation marks omitted).  And "[s]econd, cohesiveness also requires that class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating between class members."  *Id.* (citation and internal quotation marks omitted).

Defendants' alleged policies and practices of extreme housing disruption and inadequate mental health care apply generally to the class.  And, the injunctive relief sought—practice improvements described in the Settlement Agreement—is appropriate for the class as a whole.  The class meets Rule 23(b)(2)'s requirements.

Plaintiffs have established the proposed class satisfies Rule 23(a) and Rule 23(b)(2)'s requirements. So, the court certifies the proposed class for settlement purposes.

### III.      Settlement Agreement Final Approval

"The court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). The court considers four factors when assessing whether "a proposed settlement is fair, reasonable and adequate[.]" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). These are:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

*Id.* *See also Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (applying *Rutter* factors following the 2018 amendments to Fed. R. Civ. P. 23(e)). The court discusses each factor briefly, below.

#### 1.   *Whether the settlement was fairly and honestly negotiated*

The court finds that the parties have fairly and honestly negotiated the Settlement Agreement. As explained above, the parties reached this settlement following meaningful exchange of information and Class Counsel's investigation of the Kansas child welfare system. The parties engaged in extensive mediation—over the course of eight months—to reach the resulting Settlement Agreement. *See* Doc. 150 at 7–8, 18 (describing the parties' mediation process). The parties have demonstrated that the Settlement Agreement is the result of informed, adversarial, and arm's length negotiations. This factor favors approving the Settlement Agreement.

      2.   *Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt*

Plaintiffs' claims rest on complex interpretations of constitutional and federal law.  *See* Doc. 63.  Defendants' Answer asserts 52 affirmative defenses to plaintiffs' claims, placing the ultimate outcome of litigation in doubt if the parties continued to litigate.  *See* Doc. 74 at 42–49 (Answer).  In one defense, defendants assert "[p]laintiffs have failed to state a claim upon which relief may be granted" under 42 U.S.C. § 1983 because plaintiffs "fail[] to show any factual connection between any alleged, unconstitutional pattern, custom, policy, practice, or structural deficiency of [d]efendants and any alleged violation of [p]laintiffs' constitutional rights that is actionable[.]"  *Id.* at 42 ¶ 2.  Also, defendants challenge plaintiffs' claims on mootness (*id.* at 43 ¶ 6) and plaintiffs' Article III standing to bring their claims (*id.* at 43 ¶ 7).  Defendants assert 49 more defenses to plaintiffs' claims.  *Id.* at 42–49.  If the parties continue litigating, serious questions of law and fact will sharpen and, it appears to the court, they place the ultimate outcome in doubt.  The court finds this factor favors approving the Settlement Agreement.

      3.   *Whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation*

The Settlement Agreement seeks structural improvements to the Kansas child welfare system to benefit minor children in DCF custody.  Plaintiffs' Amended Complaint asserts defendants' practice of extreme housing disruption violated plaintiffs' Fourteenth Amendment rights.  *See* Doc. 63 at 2, 66–67 (Am. Compl. ¶¶ 2, 243–47).  And, plaintiffs assert, defendants violated the federal Medicaid Act for failing to provide adequate mental and behavioral health screening and treatment for children in DCF custody.  *Id.* at 3, 67–69 (Am. Compl. ¶¶ 6, 248–56).

The Settlement Agreement addresses both claims. Defendants agree to five practice improvements which are (1) ending housing for Class Members in inappropriate locations, (2) ensuring that no placement exceeds its licensed capacity without an approved exception, (3) avoid delaying medically necessary mental health treatment services until or otherwise linking mental health treatment to placement stability, (4) ensuring Crisis Intervention Services are available state wide for Class Members, and (5) ending the practice of night-to-night and short term placements for Class Members. Doc. 139-1 at 8–9 §§ 2.5.1–2.5.5. The Settlement Agreement requires defendants to report on their progress and allows a neutral to monitor defendants' progress and maintenance of the five practice improvements. *See id.* at 6–9 § 2 Performance Goals.

Testimony presented at the January 22, 2021 hearing highlighted the benefit of defendants implementing the Settlement Agreement's practice improvements to improve the Kansas child welfare system rather than wait for prolonged litigation. Many of the testifying individuals shared their personal experiences with the Kansas child welfare system and expressed a desire for more accountability and resources for minor children in DCF custody.

Only three comments expressed criticism of the Settlement Agreement. *See* Doc. 153-29–153-31 (Exs. CC–EE). The critical comments expressed their concerns that the Settlement Agreement did not address the needs of foster kids or foster families adequately. *See id.* The critical comments included concerns about Kansas's alleged lack of a long term residential mental health care (*See* Doc. 153-31 (Ex. EE)) and inadequate staffing (*See* Doc. 153-30 (Ex. DD)). The last critical comment expressed frustration with what the commenter perceived as weak enforcement mechanisms in the Settlement Agreement. Doc. 153-29 at 4 (Ex. CC). Plaintiffs addressed these criticisms in their Supplement. Doc. 152 at 6–9. They explain "the

Settlement Agreement was intentionally designed to afford [d]efendants some limited flexibility based on their professional expertise and operational needs—as long as they achieve and sustain improved outcomes for children based on the concrete and mandatory numerical benchmarks." *Id.* at 8.

While the court considers the critical comments and their concerns, the court is convinced the Settlement Agreement provides real value to the class by addressing the needs plaintiffs identify—an end to extreme housing disruption and inadequate mental healthcare. And, the court finds, the immediate relief that the Settlement Agreement provides outweighs the possibility of greater future relief after prolonged litigation. This factor favors approving the Settlement Agreement.

### 4. *Judgment of the parties that the settlement is fair and reasonable*

The parties agree the settlement is fair and reasonable. Plaintiffs' counsel includes attorneys experienced in litigating class action lawsuits on behalf of minor children in child welfare systems. *See* Doc. 150 at 17–18. Based on their experience, plaintiffs' counsel concluded the Settlement Agreement is fair and reasonable. *Id.* During the January 22, 2021 hearing, defense counsel—sophisticated in their own right—agreed that the Settlement Agreement will improve the child welfare system significantly. This factor favors approving the Settlement Agreement.[4]

---

[4] The court notes the parties stipulated to attorneys' fees in the Settlement Agreement. Doc. 139-1 at 3 § 1.4 ("Defendants stipulate that Class Counsel is entitled to Class Counsel Fees and Expenses but reserve the right to dispute the appropriate amount."). Plaintiffs' filed a separate Motion for Attorneys' Fees and Expenses (Doc. 142). A potential award of attorneys' fees and expenses does not affect the injunctive relief the Settlement Agreement provides. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) (considering "the terms of any proposed award of attorneys' fees, including timing of payment" when determining settlement's adequacy).

After considering the four *Rutter* factors, the court finds all four favor approving the settlement as fair, reasonable, and adequate.  The court thus approves the parties' class action settlement.

## IV.    Conclusion

Plaintiffs have satisfied Fed. R. Civ. P. 23(a) and 23(b)(2)'s requirements for class certification.  So, the court certifies the proposed class for settlement purposes.  And, the parties have established the Settlement Agreement is fair and reasonable.  The court thus grants plaintiffs' Unopposed Motion for Final Settlement Approval (Doc. 150).

**IT IS THEREFORE ORDERED BY THE COURT:**

1.  By agreeing to settle the litigation, defendants do not admit, and specifically deny, any and all liability in the litigation;

2.  The class action settlement, memorialized in the Settlement Agreement, is "fair, reasonable, and adequate," it resulted from extensive arm's length, good faith negotiations between the parties through experienced counsel, with the assistance of an independent mediator and subject-matter expert, and meets all other requirements of the Federal Rules;

3.  The class action settlement, memorialized in the Settlement Agreement, is finally approved and entered as a final judgment and order of the court;

4.  This action is hereby dismissed with prejudice;

5.  To the full extent permissible by the controlling precedents about subject matter jurisdiction, the court retains jurisdiction for purposes of enforcing the class action settlement, memorialized in the Settlement Agreement; and

6. Each Class Member is deemed to have released the Released Claims, as defined in the Settlement Agreement, against the defendants, and is barred from prosecuting, commencing, or continuing any of the Released Claims against any defendant.

7. The court incorporates within this final judgment and order the express terms of the Settlement Agreement, retains (to the extent legally permissible) continuing jurisdiction over the Settlement Agreement as set forth in it, and orders the parties' compliance with the terms of the Settlement Agreement.  The court adopts the Settlement Agreement as an injunctive order of the court pursuant to Fed. R. Civ. P. 65(d), indicating the court's final approval, and attaches the executed Settlement Agreement here.[5]

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' Unopposed Motion for Final Settlement Approval (Doc. 150) is granted.

**IT IS SO ORDERED.**

**Dated this 28th day of January, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[5] The court noted that the parties requested the court sign the actual Settlement Agreement, under the banner "IT IS SO ORDERED."  The court declines to do so because this Order adopts the agreement and mandates the parties to comply with its terms.  In its judgment and discretion, the court concludes that this approach is better practice.  Any party aggrieved by this decision may file a motion invoking Fed. R. Civ. P. 59.